## KENDALL v. MUSSMAN.

Court of Appeals of Kentucky.
March 28, 1952.

J. L. Richardson, A. J. Deindoerfer, Louisville, for appellant.

Anthony R. Hellmann, Louisville, for appellee.

COMBS, Justice.

Henry S. Hopke owned a parcel of land consisting of about 10 acres on Keller Avenue in Jefferson County. Mayme Hopke, wife of Henry, was a sister of Fred Mussman, the appellee in this case. On August 12, 1937, Mussman and his attorney conferred with the Hopkes about the pur-

chase by Mussman of a small lot out of the 10-acre tract. Mussman's check in the amount of $488 was delivered to Henry Hopke at that time. The check bore the notation: "For purchase of real estate on Keller Ave., Jefferson Co., Ky., to be subsequently conveyed." The following month Mussman contracted with a building contractor, Jacob Frank, to construct a house on the property. The contract price was $2365 but certain "extras," including construction of a barn, were added and Mussman actually paid Frank $2596.60. Mussman thereafter had the house wired, plumbing installed, and paid for other improvements on the property, expending in all a total of $3524.25. He and the Hopkes moved into the house and lived there together until 1943. No deed to the property was ever delivered to him.

Mussman left his abode with the Hopkes in 1943 and moved into the home of the Little Sisters of the Poor, a charitable institution in Louisville, where he has since resided. The reason for the move is not shown and the record is silent as to any other negotiations between the parties.

Mayme Hopke died in 1944, and Henry S. Hopke in 1945, both intestate. They left as their only heir an adopted son, Arthur R. Kendall, the appellant in this case. Kendall qualified as administrator of the estate of Henry S. Hopke on July 2, 1945. He completed administration of the estate and was duly discharged as administrator on August 5, 1946.

Mussman filed this suit against Kendall in June, 1947, alleging, in substance, that the Hopkes agreed to convey to him a lot on Keller Avenue, and that in consideration of their promise he paid for construction of a house on the lot and otherwise improved the property, including money expended for certain items of personal property which went into the house. He alleged a breach of the promise to convey and prayed judgment in the sum of $3524.25, covering the purchase price of the lot and improvements to the land, and $595 for the items of personal property furnished for the house.

The case was heard by a Commissioner who recommended judgment for Mussman in the amount of $3524.25, with interest from date of judgment. The Chancellor confirmed the Commissioner's report and judgment was entered accordingly. Kendall insists on the appeal that there is a total failure of proof to sustain the allegations of the petition, and that Mussman's claim is barred by laches. Mussman has filed motion for a cross-appeal.

In addition to the notation on the check referred to above, the record contains the testimony of Mr. William E. Kirwan, the attorney who was present when the check was delivered to the Hopkes. In answer to appropriate questions, this witness testified: "A. Yes, I can't recall just what was said, but it was understood—Mr. & Mrs. Hopke both agreed that the property was to be conveyed to Mr. Mussman," and "I argue with Mr. Mussman that he shouldn't buy a lot without a deed. For some reason or other Mr. & Mrs. Hopke were unwilling to give a deed at that time. That's why I made the notation on there." Other witnesses testified to statements by the Hopkes that Mussman was to live with them in the Keller Avenue property until his death, and the property then was to belong to them. It appears that Mussman has been an invalid, paralyzed from the waist down, for many years, and it is apparent that the Hopkes assumed they would outlive him. It is also shown that Mussman executed a will in which the Hopkes were named as sole beneficiaries.

■ Kendall argues that this evidence, about which there is no dispute, is inconsistent with an agreement to convey the property to Mussman. We do not see the inconsistency. The fact that Mussman wanted the Hopkes to have the property at his death does not negative the clear and convincing testimony of Mr. Kirwan, supported by the notation on the check and the conduct of the parties, that the Hopkes agreed to convey the lot to him. We think the evidence supports the Chancellor's finding on this point.

■ We are also of the opinion Mussman's claim is not barred by laches. It is true, of course, that an equitable claim may be barred by laches where a party has slept on his rights, and where his delay

and acquiescence for an unreasonable length of time would make it inequitable to permit him to reverse his position and enforce a claim inconsistent with his previous course of action. But in its true sense laches is not mere delay, but unreasonable delay that results in an injury to the adverse party; and what is unreasonable delay depends on the facts in the particular case. Culton v. Asher, 149 Ky. 659, 149 S.W. 946; Denison v. McCann, 303 Ky. 195, 197 S.W.2d 248.

Here the delay was almost 10 years, but there is explanation for part of it. Until 1943 Mussman lived on the property and, so far as is disclosed by the record, there was no repudiation by the Hopkes of their promise to convey the property to him. Furthermore, there is no showing that the delay worked to the detriment of either the Hopkes or Kendall. Their position was not changed. Counsel for Kendall places considerable emphasis on the fact the claim was not formally presented until after the Hopke estate had been settled and the administrator discharged by the court. The argument loses force, however, when it is remembered that Kendall, as administrator, had authority to administer only the personal estate. The real estate descended to him as an heir at law, and his appointment as administrator added nothing to his authority or control over it. Russell v. Hogan, 282 Ky. 764, 140 S.W.2d 615. As indicative of some degree of diligence on Mussman's part, it is noted that he consulted two attorneys in 1945 with reference to his claim and also informed Kendall of his claim prior to his discharge as administrator.

A review of the testimony convinces us that the Chancellor properly held that Mussman's claim in regard to personal property furnished by him for the house is too vague and indefinite to support a judgment in his favor.

Whether interest should be allowed on an unliquidated claim of this nature is largely within the discretion of the Chancellor. Fidelity & Casualty Co. of New York v. Downey, 284 Ky. 72, 143 S. W.2d 869. Under the circumstances shown,

and especially in view of the fact Mussman lived on the property for approximately six years, the Chancellor did not abuse his discretion in refusing to allow interest prior to entry of the judgment.

The judgment is affirmed on the appeal and the cross-appeal.