**PLAZA CONDOMINIUM ASSOCIATION, INC. and Ziegler & Schneider, P.S.C., Successor to T.J. Brandt (Deceased), Appellants,**

v.

**WELLINGTON CORPORATION, Appellee.**

No. 95–SC–211–DG.

Supreme Court of Kentucky.

April 25, 1996.

Joseph L. Baker, Sharon S. Elliston, Ziegler & Schneider, P.S.C., Covington, for Appellants.

James G. Woltermann, John S. "Brook" Brooking, Adams, Brooking, Stepner, Woltermann & Dusing, Florence, for Appellee.

LAMBERT, Justice.

■ We are called upon to construe portions of the Horizontal Property Law Act, KRS 381.805, *et seq.*, and in particular the provision which prescribes the contributions required of co-owners toward common expenses, KRS 381.870. Appellants contend that it was unlawful for appellee, the developer, to grant itself a 75% reduction from its pro rata share of common expenses, thus increasing the cost to other owners. Appellee concedes the reduction but insists that the statute permits a departure from strict pro rata division and further contends that in the event its reduced expense payment is determined to have been unlawful, the claim appellants assert is barred by laches.

In 1986, appellee, the Wellington Corporation, recorded a master deed creating a 51–unit condominium project known as Riverside Plaza in Kenton County, Kentucky. At or about the same time, appellee incorporated an entity known as Plaza Condominium Association, Inc., which appears in this litigation as appellants. The condominium association was the council of co-owners as provided for in the statutes. KRS 381.810(4) and KRS 381.870. The initial board of directors consisted of the developer and two of its lawyers. The by-laws adopted by the initial board of directors granted enhanced voting rights to the developer so that appellee was given five votes for each unsold unit during the first three years while other owners had only one vote per condominium unit. The effect of this enhanced voting right during the first three years was to give the developer virtual autonomy, although it is contended that such control was neither challenged nor exercised.

The master deed and the by-laws of the association provided that the developer, appellee herein, would be required to pay only 25% of pro rata expenses. This circumstance prevailed from the inception of the project, July 1986, until December of 1991 when appellants amended the by-laws to require appellee to pay 100% of the monthly assessment. Based on the disparity between the payments made by appellee and by all other condominium owners, appellant sought recovery of the approximate sum of $67,000 plus interest from the commencement of litigation and attorney's fees.

Initially, we must review KRS 381.870. This statute provides that

> [a]ll co-owners are bound to contribute in accordance with their percentage of common interest toward the expenses of administration and of maintenance, repairs and replacement reserves of the general common elements, and, in the proper case, of the limited common elements of the regime, and toward any other expenses lawfully assessed under the master deed and/or by the council of co-owners.

*Id.* The statute also provides "for adjustments by the council of co-owners for contri-

butions proportioned upon a consideration of a combination of floor area, the number of occupants, demand on public utilities and accessibility to limited common elements." *Id.*

▇ The courts of this Commonwealth have not heretofore spoken to the proper construction of this statute. *Cf. Monarch v. Lodge Condominium Council of Co–Owners, Inc.,* Ky.App., 684 S.W.2d 317, 319–20 (1985) (holding that a co-owner could seek specific performance against the council of co-owners to complete repairs to a condominium). In our view, however, the statute is not unduly complex. The overriding principle is that all co-owners, by whatever means their ownership arose, are to contribute according to the percentage of their interest. A departure from such percentage contribution is permitted upon consideration of the statutory factors, but an owner may not escape his or her share of the expenses by waiver. One seeking an adjustment based upon the statutory factors is obligated to demonstrate the reasonableness of the reduction sought. The statute begins with the proposition that all owners shall contribute pro rata and any owner seeking to depart therefrom bears the burden of demonstrating entitlement to a reduction.

When the foregoing is applied in the case at bar, the 75% reduction granted the developer cannot be harmonized with the statute. In view of the statutory scheme, it is virtually inconceivable that such a substantial reduction for one owner could be justified. The Court of Appeals recognized this as follows:

> Needless to say, the provision in the master deed itself for favorable treatment of the developer's unoccupied units did not comply with this statute. It also does not appear that the adjustment made by the council, when made, was actually proportioned upon a consideration of the statutory factors, particularly in view of the fact that only vacant units belonging to the developer were given favorable assessment treatment.

*Plaza Condominium Assoc. v. Wellington Corp.,* Ky.App., 93–CA–001049–MR, 93–CA–001216–MR, slip op. at 3–4 (Feb. 17, 1995).

Most of the expenses for which co-owners are bound to contribute are fixed and occupancy has little to do with generating such costs. Thus, pro rata distribution is the rule. For a limited class of expenses, however, occupancy is relevant to costs and the statute permits a limited adjustment to reflect this circumstance. Upon remand, the evidence shall be considered in light of the statutory factors and an appropriate reduction, if any, granted appellee.

▇ In the Court of Appeals, appellants' contentions with respect to statutory construction were essentially accepted. However, that court determined that appellants had been guilty of laches by virtue of unreasonable delay to the disadvantage of appellee. The court believed that failure to contest the developer's favorable treatment from July of 1986 until commencement of this litigation was enough to bar the claim.

The parties intensely debate whether there was an unreasonable delay and, if so, whether it was justified by the actions of appellee. The trial court and Court of Appeals found no reasonable justification for the delay and we cannot say they were wrong on that point. However, necessary to a successful plea of laches is the additional element of prejudice as a result of the delay. The trial court found such prejudice by concluding that if the developer had been given more timely notice of the claim, it "simply would have recouped that cost by increasing the sale price for each of the individual condominium units." The Court of Appeals did not disagree.

On this point we cannot agree with the courts below. There is no reason to believe that appellee sold any of its condominium units for less than the market would bear. In general, market forces determine the price of real property and the owner of property has no ability to recoup additional costs simply by "adding it on to the sale price." We are confident that any cost which could have been added on was added on. The trial court's finding that the developer "simply would have upwardly adjusted the purchase price of the condominium units to offset that additional expense" is clearly erroneous. To

the extent the Court of Appeals accepted that view, it, too, was in error.

 Appellants' claim is for money damages and no statute of limitations has yet run. As such, the delay in the present case is not of such consequence as to harm appellees to the extent that this claim should not be heard. It is not necessary to engage in an extensive review of the doctrine of laches. It is sufficient to say that this doctrine serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action. *See Kendall v. Mussman*, Ky., 247 S.W.2d 502, 503–04 (1952). Prior to the expiration of the limitation period, however, one claiming a bar based on delay must also show prejudice. This proposition was well articulated in *Denison v. McCann*, 303 Ky. 195, 197 S.W.2d 248, 249 (1946), quoting *City of Paducah v. Gillispie*, 273 Ky. 101, 115 S.W.2d 574, 575 (1938), as follows:

> 'Laches' in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

(citations omitted). Here we have determined that while appellants may have been guilty of delay in asserting their rights, appellee suffered no significant prejudice, certainly none of such consequence as to equitably bar appellants' claim.

 Upon our determination that reversal of the courts below is required, we must also determine what remedy should follow. The case should be remanded for additional evidence, if the parties so desire. Thereafter, the trial court should render new findings of fact and conclusions of law. In making such findings of fact, the court shall consider the principles as set forth herein with regard to the construction of KRS 381.870. If appellee is able to show its entitlement to relief based on the statutory factors, the court may grant a reasonable adjustment. Otherwise, as we have said herein, pro rata contribution is the rule which should be applied.

At the commencement of this litigation, appellants obtained an assessment lien against four units which were still owned by appellee. An agreement was reached between the parties which granted a mortgage upon one unit and the lien was released upon the other three. The trial court, holding that appellants were entitled to no payments from appellee under the statute, or because of the doctrine of laches, ordered release of the mortgage. Appellants now insist that this was error.

By its terms, the date of maturity of the mortgage was the earlier of September 15, 1996, or "the date of the final and unappealable judgment" in this action. It is obvious that neither occasion has yet arrived and our determination that this cause must be reversed and remanded requires that we likewise reinstate the mortgage upon the condominium unit. The agreement which resulted in this mortgage lien was fully negotiated by the parties and they agreed that it should be construed in favor of appellants. This Court's decision in *O.P. Link Handle Co. v. Wright*, Ky., 429 S.W.2d 842 (1968), holds that "it is not the function of the judiciary to change the obligations of a contract which the parties have seen fit to make." *Id.* at 847 (quoting *Williston on Contracts* § 610A (3d ed.)).

 As a final part of their claim, appellants' seek attorney's fees. Under KRS 381.990(5), such fees are available if a party violates the by-laws of the council of co-owners as set forth in KRS 381.860. The statutes relating to attorney's fees simply do not apply in circumstances where a co-owner claims a right pursuant to the by-laws, even

though such claim may be determined to be invalid.

As set forth above, this cause is remanded to the Kenton Circuit Court for further proceedings consistent herewith.

STEPHENS, C.J., and GRAVES, KING, LAMBERT, and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

BAKER, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because the Court of Appeals properly affirmed the decision of the circuit court based solely on the doctrine of laches in the delay of the Association in bringing the action so as to significantly prejudice the opposing party. Laches is a failure to do something which should have been done or to enforce a right at a proper time.

The Association has abandoned its original argument to the Court of Appeals in regard to laches and now seems to claim that the doctrine does not apply at all because the action includes a legal claim for a money judgment as well as equitable foreclosure under the terms of KRS 381.883.

As the Court of Appeals stated, the legality of the discount provision is highly questionable, and it may not comply with the statutes governing condominium-property regimes. Certainly some sympathy can be engendered for the Association, and the underlying issue, that is the legality of Wellington's scheme, may merit criticism. However, this kind of horizontal property case, as a condominium dispute between owners, is governed by contract law. It must be assumed that all parties to the original agreement were competent and consenting. The claim of manifest injustice is unconvincing. In addition, this case has problems with preservation as well as delay.

The responsibility of this Court is to review the decisions of the other courts, not to discover new facts. Consequently, on balance, I cannot say that the Court of Appeals committed reversible error in deciding the case on the basis of laches or that the circuit court was clearly erroneous in its evaluation of the facts and application of the law.