RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0641-MR

O J REAL ESTATE, LLC; O J
PHARMACY, INC.; AND WALTER'S
FAMILY PHARMACY, INC.                                    APPELLANTS


APPEAL FROM CALLOWAY CIRCUIT COURT
v.          HONORABLE ANDREA L. MOORE, JUDGE
ACTION NO. 20-CI-00329


WALTER W. MEHR; FNB BANK,
INC.; AND PATRICIA A. MEHR                                APPELLEES

AND


NO. 2023-CA-0652-MR

WALTER W. MEHR AND PATRICIA
A. MEHR                                        CROSS-APPELLANTS


CROSS-APPEAL FROM CALLOWAY CIRCUIT COURT
v.          HONORABLE ANDREA L. MOORE, JUDGE
ACTION NO. 20-CI-00329


O J REAL ESTATE, LLC; FNB BANK,
INC.; O J PHARMACY, INC.; AND
WALTER'S FAMILY PHARMACY,
INC.                                           CROSS-APPELLEES

IN APPEAL No. 2023-CA-0641-MR, AFFIRMING IN PART, REVERSING IN PART, AND REMANDING AND IN CROSS-APPEAL No. 2023-CA-0652-MR, AFFIRMING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND A. JONES, JUDGES.

GOODWINE, JUDGE: O J Real Estate, LLC; O J Pharmacy; and Walter's Family Pharmacy, Inc. (collectively "O J Pharmacy") appeal the judgment of the Calloway Circuit Court awarding Walter W. Mehr and Patricia A. Mehr ("the Mehrs") a purchase price adjustment with pre-judgment interest. O J Pharmacy also appeals the court's award of compounded post-judgment interest. The Mehrs cross-appeal the order amending the award of attorney fees. In appeal No. 2023-CA-0641-MR, we affirm, in part, the award of a price adjustment in favor of the Mehrs and reverse, in part, the award of pre-judgment interest. We also reverse, in part, and remand the order awarding compounded post-judgment interest. In cross-appeal No. 2023-CA-0652-MR, we affirm the order amending the award of attorney fees.[1]

## BACKGROUND

In 2012, O J Pharmacy purchased Walter's Family Pharmacy from the Mehrs. The sale included an agreement for the sale of commercial real estate; an agreement for the sale of 10% of stock in Walter's Family Pharmacy; and a stock

_____

[1] This decision does not affect the portions of the judgments not appealed by the parties.

redemption agreement ("SRA") for the redemption of the remaining 90% of stock in the pharmacy, which is the primary focus of this action. Under Section 1.3 of the SRA, Walter's Family Pharmacy redeemed 900 shares of common stock owned by Mehr for $2,520,000 with $1,320,000 payable in cash at closing and the balance to be paid by delivery of a $1,200,000 promissory note ("the note"). Record ("R.") at 38-39. The SRA also states

> 1.4 Working Capital Formula. The Purchase Price as described in Section 1.3 above shall be adjusted up or down based on the Working Capital Formula described in Schedule 1.4 attached hereto. Any adjustment made to the Purchase Price for the transaction shall affect the cash paid at the Closing Date for the purchase and redemption of all stockholders' shares. The amount of the Note shall not be affected by any adjustment based on the Working Capital Formula. The parties shall undertake their best efforts to finalize the adjustments to the corporate accounting for Corporation[2] through the Effective Date of this transaction based on the Working Capital Formula. Any and all adjustments made to the corporate accounting for Corporation through the Effective Date shall be completed by September 30, 2012. Any necessary adjustment to the Purchase Price shall be due and payable to the appropriate party in cash or certified funds no later than October 10, 2012.

*Id.* at 39. Schedule 1.4 defines the "working capital formula" as follows

> The purchase price on shares redeemed ($3,600,000) shall be adjusted up or down based upon a working capital calculation defined as:

---

[2] "Corporation" refers to Walter's Family Pharmacy.

(Cash in Bank + Accounts Receivable + Inventory + All Prepaid Expenses) – (Trade Account Payables + Other Short-term Payables + Income Taxes Payable), excluding any amounts related to [Walter's Family Pharmacy] issuing new shares to O.J. Pharmacy.

*Id*. at 52.

Section three of the SRA, "Representations and Warranties of Stockholder," repeatedly references a December 31, 2011 balance sheet ("the balance sheet").  Therein, the balance sheet is incorporated by reference into the agreement and is included as Schedule 3(E).  Mehr, as the stockholder, warranted that the balance sheet provided "a true and accurate statement as to the financial condition of Corporation on December 31, 2011, and the results of its prior operation, prepared in conformity with generally accepted accounting principles consistently applied."  *Id.* at 41.

Separately, the note required O J Pharmacy to pay Mehr $1,200,000 "with interest at the rate of six percent (6%) per annum[.]"  *Id*. at 17.  Under the terms of the note,

> [i]n the event of default, either in whole or in part, in the payment of any installment on this Note for a period of more than thirty (30) days after written notice of such default has been delivered to the undersigned, then the entire unpaid principal sum together with all accrued interest shall, at the option of the holder hereof, become immediately due and payable.

-4-

*Id*. at 17-18. Furthermore, "[i]n case this Note is placed in the hands of an attorney to protect the interest of the holder hereof, or for collection, compromise or other action, the undersigned agrees to pay the reasonable fees of such attorney." *Id*. at 18.

On November 17, 2020, the Mehrs filed suit alleging O J Pharmacy "failed to make payments according to the terms of the Note." *Id*. at 7. The Mehrs gave notice of default to O J Pharmacy on June 12, 2020, and, when it was not cured, Mehr notified O J Pharmacy of the acceleration of the entire amount owed on July 27, 2020. In addition to requesting a judgment in the amount owed, with interest, costs, and attorney fees, the Mehrs requested a judgment for

> $157,670.00, plus any addition [sic] sums that may be owed after a full accounting is performed regarding the working capital values of the Pharmacy that actually existed on the closing date and a full accounting of the accounts payable, the accounts receivable and other items included in the working capital formula so that further adjustments can be properly made.

*Id*. at 13.

O J Pharmacy brought a counterclaim seeking a declaratory judgment that it had satisfied all obligations under the note and SRA. O J Pharmacy claimed

> 4. Prior to signing the Stock Redemption Agreement and other related documents, the parties agreed that Walter's Family Pharmacy must have working capital in the amount of $1,250,000 (the "Peg") on the date of closing, and that the case portion of the purchase price would be

adjusted up or down after closing to satisfy the Peg amount.

5. Due to a mutual mistake, the Peg amount was inadvertently omitted from the Stock Redemption Agreement.

6. The omission of the Peg amount was a mutual mistake regarding a material fact affecting the amount owed by O J Pharmacy, Inc. under the Promissory note.

7. The Working Capital Formula, when applied, revealed that Walter's Family Pharmacy had available working capital in the amount of $943,942.14 on the date of closing, which was $306,507.86 less than the Peg amount.

8. Subsequent to closing Plaintiff Walter Mehr and Defendant O J Pharmacy, Inc. agreed to reduce the amount owed under the Promissory Note in an amount equal to $306,000 from $1,200,000 to $894,000.

*Id.* at 57-58.

Thereafter, the Mehrs moved for partial summary judgment, requesting the trial court find O J Pharmacy in default under the terms of the note and to dismiss O J Pharmacy's counterclaim.

On December 3, 2021, the trial court granted the Mehrs' motion. In granting summary judgment on O J Pharmacy's counterclaim, the court determined it lacked the authority to reform a fully integrated contract without evidence of mutual mistake. The court held there was no genuine issue of material fact as to

-6-

O J Pharmacy's claim of mutual mistake and the alleged "peg amount"[3] of

$1,250,000.  The court further held O J Pharmacy

> has defaulted under the terms of the notes and . . . the
> entire periodic payments are accelerated, and the entire
> unpaid balance is owed.  [] Mehr is granted summary
> judgment against OJ Pharmacy, Inc. in the principal sum
> of $490,790.76 plus interest at 6% per day, until paid,
> said interest accruing at a per diem rate of $75.60.  []
> Mehr is further granted judgment against OJ Pharmacy,
> Inc. for reasonable attorney's fees pursuant to the terms
> of the Note in the amount of $163,596.66.

*Id.* at 949.  The awarded attorney fees were based on a contingency fee agreement

between the Mehrs and their counsel.

O J Pharmacy moved under CR[4] 59.05 to amend the judgment as to

the attorney fees and the interest.  In an October 24, 2022 order, the trial court

granted the motion as to attorney fees because there was no hearing on or

consideration of the reasonableness of the requested fees.  The court reduced the

awarded attorney fees to $68,000.

As to interest, on April 24, 2023, the court amended its December 3,

2021 judgment to remove "in the principal sum of $490,790.76 plus interest at 6%

---

[3] This term is not used in Section 1.4, Schedule 1.4, or elsewhere in the SRA.  It was first used by O J Pharmacy in its answer and counterclaim.  "Baseline amount" is interchangeably used throughout the record, but is also absent from the SRA.  Both terms refer to the amount of working capital used to compare to the working capital amount at closing under Section 1.4 of the SRA to make any necessary adjustments.  We will use "peg amount" for consistency and clarity.

[4] Kentucky Rules of Civil Procedure.

per day, until paid, said interest accruing at a per diem rate of $75.60." R. at 1167.

The court replaced this language with

> in the principal sum of $460,808.00 plus interest at 6%
> per annum from May 1, 2020 through December 3, 2021
> in the amount of $44,086.50 for a total judgment amount
> in the amount of $504,894.50 as of December 3, 2021,
> which sum shall bear six percent (6%) interest
> compounded annually from December 3, 2021.

*Id.*

The Mehrs later moved for summary judgment on their remaining claims, including their request for a judgment in the amount of an alleged increase in working capital under Section 1.4 by using the balance sheet to calculate the peg amount. O J Pharmacy argued, based on the trial court's December 3, 2021 judgment, that the court was without the authority to add the missing term as requested by the Mehrs and, therefore, no price adjustment could be made.

On October 24, 2022, the trial court granted the Mehrs' motion, and, without explicitly characterizing the terms of Section 1.4 as ambiguous, held

> [w]hile the Stock Redemption Agreement does not set
> forth the peg amount as explicitly as perhaps it could
> have, it does establish that amount with such reasonable
> certainty that the parties are bound by it. The agreement,
> which was signed on July 3, 2012, referenced the balance
> sheet of December 31, 2011, and had the balance sheet
> attached. The deposition of Daniel Jones contained the
> following exchange:
>
> > Q. And so isn't this working capital formula
> > sort of a way to – to keep everybody honest,

> where if – if he sort of fattens the bottom line while he's operating it in the first half of 2012 or he loses money in the first half of 2012 that you would get an adjustment or he would get an increase of the value of that working capital or a decrease in the working capital. Is that a fair statement?
>
> A. I believe so.
>
> While Jones' testimony is not part of the agreement and not evidence of the terms of the agreement itself, it does demonstrate that he contemplated an adjustment based on any change in working capital during the first part of 2012.
>
> Reading the Stock Redemption Agreement as a whole it is apparent the parties agreed the December 31, 2011, balance sheet would be used to determine the adjustment. The [c]ourt concludes as a matter of law that the parties agreed the working capital formula would use the amount on the balance sheet as the peg amount.

*Id*. at 1124-25. The court also awarded the Mehrs pre-judgment interest of 8% from October 12, 2012, the date on which any adjustment was to be paid under the terms of the SRA.

The trial court denied O J Pharmacy's motion to alter, amend, or vacate the October 24, 2022 judgment. This appeal and cross-appeal followed.

## STANDARD OF REVIEW

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most

-9-

> favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Phoenix American Administrators, LLC v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023) (citation omitted). Because interpretation of the terms of a contract involves only questions of law, we review *de novo*. *Id*. (citation omitted).

We review a trial court's award of attorney fees for an abuse of discretion. *Progressive Direct Insurance Company v. Hartson*, 661 S.W.3d 291, 304 (Ky. App. 2023) (citation omitted).

## ANALYSIS

On appeal, O J Pharmacy argues: (1) the trial court erred by awarding the Mehrs a price adjustment based on the insertion of the peg amount as a term in the contract; (2) the trial court improperly awarded the Mehrs pre-judgment interest from October 12, 2012; and (3) the trial court erred by granting compounded post-judgment interest.[5] On cross-appeal, the Mehrs argue the trial

---

[5] In its initial brief, O J Pharmacy claims the trial court awarded compounded *pre-judgment interest*. However, the record shows the court awarded compounded *post-judgment interest* in its April 24, 2023 order amending its December 3, 2021 judgment. Seemingly in recognition of its mistake, in its reply brief, O J Pharmacy broadly argues "[a]ny interest awarded must be simple interest rather than compounded interest."

-10-

court erred by amending its judgment to reduce the attorney fees awarded to the Mehrs.

Before we begin our analysis of the price adjustment, we note that both parties primarily rely on *Walker v. Keith*, 382 S.W.2d 198 (Ky. 1964), which was also cited by the trial court in its October 24, 2022 judgment. However, *Walker* is inapplicable to this matter. Therein, the Court found a renewal provision in a lease "fatally defective in failing to specify either an agreed rental or an agreed method by which it could be fixed with certainty." *Id*. at 205. The Court held there was no contract between the parties as to renewal because "[a]n agreement to agree simply does not fix an enforceable obligation." *Id*. at 201. Here, the contract between the Mehrs and O J Pharmacy has been fully executed and does not involve any such agreement to agree. The parties left nothing to future negotiations, but only asked the court to interpret a single term. For this reason, we will not rely on *Walker* in our analysis.

The primary goal of contract interpretation is to give effect to the parties' intentions. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002) (citation omitted). Courts must give effect to every part and word of a contract if possible. *Id*. at 384-85 (citation omitted). The intentions of the parties must be determined from the four corners of the document itself unless it contains an ambiguity. *Id*. at 385 (citation omitted). An ambiguity exists where

"a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* (citation omitted).

> Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties.

*Id.* (citations omitted).

We must determine whether the terms of Section 1.4 are ambiguous and, if so, whether the court appropriately resolved the ambiguity in the Mehrs' favor.[6] Both parties moved for summary judgment and requested the court interpret the terms of Section 1.4 of the SRA. O J Pharmacy claims the terms are incomplete, making the section unenforceable,[7] while the Mehrs contend that the terms unambiguously require an adjustment based on the balance sheet.

The parties agreed

---

[6] At oral arguments, the Mehrs claimed the trial court found no ambiguity in the terms of Section 1.4 in its December 3, 2021 judgment and, as such, the trial court and this Court are bound by the "law of the case" doctrine. This is incorrect on two grounds. First, the court made no such determination but only restated O J Pharmacy's allegation of mutual mistake not ambiguity. Second, the law of the case doctrine mandates that the opinion of an *appellate court* in the same cause of action is binding upon any subsequent trial or appellate decision. *University Medical Center, Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014) (citation omitted). There has been no prior decision by an appellate court in this matter. Any argument that this Court is bound by a trial court's prior decision on a matter of law is erroneous.

[7] O J Pharmacy first alleged the parties agreed to a peg amount of $1,250,000. Use of this amount would have resulted in an adjustment of the purchase price in its favor. The trial court rejected O J Pharmacy's claim of mutual mistake in its December 3, 2021 judgment. O J Pharmacy chose not to appeal from that decision but maintains that $1,250,000 should be used as the peg amount if Section 1.4 is enforceable.

-12-

> [t]he Purchase Price as described in Section 1.3 above shall be adjusted up or down based on the Working Capital Formula described in Schedule 1.4 attached here to. Any adjustment made to the Purchase Price for the transaction shall affect the cash paid at the Closing Date for the purchase and redemption of all stockholders' shares. The amount of the Note shall not be affected by any adjustment based on the Working Capital Formula. The parties shall undertake their best efforts to finalize the adjustments to the corporate accounting for Corporation through the Effective Date of this transaction based on the Working Capital Formula. Any and all adjustments made to the corporate accounting for Corporation through the Effective Date shall be completed by September 30, 2012. Any necessary adjustment to the Purchase Price shall be due and payable to the appropriate party in cash or certified funds no later than October 10, 2012.

R. at 39. Elsewhere in the SRA, June 30, 2012 is identified as the "effective date." *Id*. at 40. The parties agree the working capital on that date was $943,942.14. However, adjustment of the purchase price requires the working capital on June 30th to be compared to the working capital on some earlier date – the peg amount. Despite the existence of a formula in Schedule 1.4, the parameters for such an adjustment are not fully defined, creating an obvious ambiguity as to the peg amount.

There is no dispute that the parties intended to allow for some adjustment, either up or down, to the purchase price based upon corporate accounting. The only remaining ambiguity is what the parties intended as the peg amount. To resolve this issue, the trial court correctly considered extrinsic

evidence in the form of the balance sheet, Daniel Jones' deposition,[8] and Walter

Mehr's unsworn affidavit.  The court reasoned

> [i]t is not plausible that the parties would have agreed on
> a peg amount of $1,250,000. As stated by Mehr in his
> unsworn affidavit, it is not reasonable he would have
> agreed to such an amount when the balance sheet of
> December 31, 2011, showed $795,060 and was known by
> both parties as it was attached to the Stock Redemption
> Agreement and referenced therein.

R. at 1124.  In his deposition, Daniel Jones agreed any price adjustment was to be

based upon the working capital in "the first half of 2012." *Id*.  Where both parties

knew of the balance sheet and agreed to adjust the price based on any change in the

working capital during the first half of 2012, the court did not err by finding the

parties intended to use the balance sheet to calculate the peg amount.  Therefore,

we affirm the price adjustment of $148,431.54 in the Mehrs' favor.

However, the trial court erroneously awarded the Mehrs pre-judgment

interest on the price adjustment back to October 12, 2012.  The Mehrs claim they

were entitled to pre-judgment interest because the price adjustment constitutes an

award of liquidated damages.  It is true that a party is entitled to pre-judgment

interest on liquidated damages as a matter of right. *AnyConnect US, LLC v.

Williamsburg Place, LLC*, 636 S.W.3d 556, 567 (Ky. App. 2021) (citation

omitted).  Damages are liquidated when the amount "has been made certain and

---

[8] Daniel Jones is the president of O J Pharmacy.

-14-

fixed either by the act and agreement of the parties or by operation of law to a sum which cannot be changed by the proof." *Hazel Enterprises, LLC v. Ray*, 510 S.W.3d 840, 843-44 (Ky. App. 2017) (citation omitted). As made clear by our prior analysis, the price adjustment was neither fixed nor certain under the terms of Section 1.4. Because of the ambiguity as to the peg amount, it is easily distinguished from liquidated damages such as past due bills, amounts due on open accounts, and unpaid fixed contract prices. *See Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991). Where damages are unliquidated, any award of pre-judgment interest is within the trial court's discretion. *See AnyConnect*, 636 S.W.3d at 567. Therefore, we are left to decide whether the trial abused its discretion.

To make this determination, we will consider O J Pharmacy's argument that the award of pre-judgment interest should be reversed under the doctrine of laches.

> Laches in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. . . . The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

*Bruner v. Cooper*, 677 S.W.3d 252, 270 (Ky. 2023) (footnote omitted). Furthermore, where an action is initiated before expiration of the statutory

limitation, "one claiming a bar based on delay must also show prejudice." *Plaza Condominium Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996) (citation omitted). Here, the Mehrs initiated their suit within the statute of limitations. KRS[9] 413.090(2). However, because they waited eight years, O J Pharmacy was clearly prejudiced by the accumulation of interest.

Although nonbinding, we are persuaded by the reasoning of the Court in *Bank Josephine v. McGuire*, No. 2004-CA-001002-MR, 2005 WL 856896, *3 (Ky. App. Apr. 15, 2005). In *McGuire*, a former employee sued Bank Josephine for money damages nearly nine years after he was terminated from his employment but within the statute of limitations. *Id.* at *1. The bank unsuccessfully asserted laches as a defense and the circuit court awarded McGuire $350,947.00, including pre-judgment interest. *Id*. On appeal, the Court held laches was unavailable as a defense for the issues relating to interpretation of the contract. *Id.* at *2. However, as to the award of pre-judgment interest, the Court held

> [t]his is where McGuire's nine-year delay works to the prejudice of the bank. The award of pre-judgment interest is a matter of equity; laches must bar McGuire's profiting from his own delay. *Nucor Corporation v. General Electric Co.*, 812 S.W.2d 136, 143 (Ky. 1991). While laches might not act to bar him from receiving the contractual liquidated damages to which he is entitled, he should not be allowed to enhance his award by his own

---

[9] Kentucky Revised Statutes.

-16-

> failure to assert his demand. McGuire should receive
> pre-judgment interest only from the date of filing this
> action. Although the damages are liquidated, equity and
> fairness demand this limitation on pre-judgment interest.

*Id*. at *3.

Equity demands that the Mehrs not be allowed to profit from their unexplained delay. Although the price adjustment was due to be paid on October 12, 2012, the Mehrs made no demand for it until they filed suit on November 17, 2020. This delay clearly prejudiced O J Pharmacy in the form of accumulated pre-judgment interest. Equity and fairness further weigh in O J Pharmacy's favor because of the ambiguity in the terms of Section 1.4 which made their obligation uncertain before this action. The trial court abused its discretion because the Mehrs unreasonably neglected their right without explanation, resulting in unfair prejudice to O J Pharmacy.[10]

Next, the trial court erred by granting compounded post-judgment interest on the judgment under the terms of the note. The rate established in the note is "six percent (6%) per annum[.]" R. at 17. This is simple interest.[11] The

---

[10] The parties also raise arguments as to whether the pre-judgment interest should be compounded. We need not address the merits of these arguments because the trial court did not award compounded pre-judgment interest. *Pettingill v. Pettingill*, 480 S.W.3d 920, 923 (Ky. 2015) (holding "[t]o opine on a non-issue, which would not be decisive, would be to render an advisory opinion in violation of the constitutional mandate of this Court").

[11] The Mehrs cite to *December Farm International, LLC v. December Estate, LLC*, No. 2019-CA-0983-MR, 2021 WL 1823278, *13 (Ky. App. May 7, 2021), to claim that "per annum" and "compounded annually" are interchangeable. Therein, a panel of this Court quotes a portion of

-17-

trial court first granted simple interest at 6% per day. This was a clear mistake under the terms of the note. The Mehrs concede this error. The trial court corrected its mistake in its April 24, 2023 order, but, without explanation, awarded the Mehrs a judgment with "six percent (6%) interest *compounded annually* from December 3, 2021." *Id*. at 17.[12]

"A judgment rendered on a contract, promissory note, or other written obligation shall bear interest at the interest rate established in that contract, promissory note, or other written obligation." KRS 360.040(3). "Shall" is "a word of command and . . . must be given a compulsory meaning." *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795 (Ky. 2003) (citation omitted). Based on the mandatory statutory language, the trial court erred by granting compound interest where the promissory note did not do so.

Finally, we turn to the Mehrs' sole argument on cross-appeal – that the trial court erroneously reduced its award of attorney fees. The court initially awarded $163,599.66 in its December 3, 2021 order, calling such fees "reasonable" without a hearing or further analysis. The only evidence before the court at the

---

the trial court judgment which awards post-judgment interest at a rate of 12% "per annum, or compounded annually[.]" *Id*. The panel did not specifically address this finding because it was not contested on appeal. We are unpersuaded by the Mehrs' argument.

[12] This order was tendered by the Mehrs' counsel and was entered by the trial court without change.

-18-

time was the contingency fee agreement. After a hearing, the court granted O J Pharmacy's CR 59.05 motion and reduced the award to $68,000.

First, the Mehrs claim, under CR 59.05, the trial court should not have amended the judgment because its initial award was not "manifestly unjust." Trial courts generally have "unlimited power" to alter or amend their own judgments. *Bailey v. Bailey*, 399 S.W.3d 797, 801 (Ky. App. 2013) (citation omitted). Our Courts have previously cited to Federal Rules of Civil Procedure 59(e), the federal counterpart to CR 59.05, to clarify the grounds on which a motion may be granted.

> There are four basic grounds upon which a Rule 59(e) motion may be granted. First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*Bailey*, 399 S.W.3d at 801 (citation omitted). "[A]ny award of an attorney fee is subject to a determination of reasonableness by the trial court." *Key v. Mariner Finance, LLC*, 617 S.W.3d 819, 825 (Ky. App. 2020) (citation omitted). The trial court initially awarded attorney fees based solely on the Mehrs' contingency fee agreement without considering evidence of their reasonableness. The court properly granted the CR 59.05 motion to correct this manifest error of law.

-19-

The initial award was based upon a one-third contingency fee agreement entered into by the Mehrs and their counsel. In arguing the reasonableness of awarding attorney fees based on a contingency agreement, the Mehrs rely on *King v. Grecco*, 111 S.W.3d 877, 883-84 (Ky. App. 2002), *superseded on other grounds by Meece v. Feldman Lumber Co.*, 290 S.W.3d 631 (Ky. 2009). Therein, the trial court awarded the Greccos $6,666.66 based on such an agreement. *Id.* at 883. However, counsel had provided itemization showing services valued at more than $14,000. *Id.* Based on the context of the case, the Court found the trial court's reliance on the contingency agreement reasonable. *Id.*

There are a number of factors a court may consider when awarding attorney fees including

> the time and labor required, the difficulty of the questions involved, the skill required to perform the legal service, the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer, the customary fee charged for a similar service, the amount involved in the case, the time limitations, the length of the professional relationship with the client, the experience and reputation of the lawyer, and whether the fee is fixed or contingent.

*Key*, 617 S.W.3d at 824 (citation omitted). A party seeking attorney fees must prove the amount is "not excessive and accurately reflects the reasonable value of bona fide legal expenses incurred." *Capital Cadillacs Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). While a court is not foreclosed from considering a

party's contingency agreement as was done in *King*, the court must also take into account the actual expenses incurred by the party.

Here, the Mehrs were entitled to recover "reasonable fees" under the terms of the note. R. at 18. Considering the reasonableness factors, the trial court found:

1. The fee should be awarded only for counsel's work in connection with the collection of the note and not for work in connection with the issues surrounding the Stock Redemption Agreement (to some extent, there was likely an overlap, however).

2. The normal fee for Mehr's counsel was $600 per hour. While counsel is very competent in his representation of all his clients in this case and is obviously very competent in his representation of all his clients, particularly in this type of litigation, the normal hourly rate in this area is $200-225 per hour as evidenced by affidavits submitted by OJ.

3. The time and labor required in connection with obtaining judgment on the note.

4. The skill required to perform the service, which factor is favorable to Mehr.

5. The length of the professional relationship with the client (his brother), which factor is favorable to Mehr.

6. The experience and reputation of the lawyer, which factor is favorable to Mehr.

R. at 1130. Unlike in *King*, the Mehrs did not prove they had actually incurred legal services valued at $163,599.66. Instead, using a reasonable rate, the court calculated its award based on counsel's reported services. The resulting reduction in the fees awarded is not an abuse of discretion.

## CONCLUSION

Based on the foregoing, in appeal No. 2023-CA-0641-MR, the December 3, 2021 judgment of the Calloway Circuit Court, as amended by the April 14, 2023 order, is reversed as to the award of compounded post-judgment interest. It is remanded for entry of an order amending the judgment to award simple per annum interest consistent with the terms of the note. The October 24, 2022 judgment is affirmed, in part, as to the price adjustment of $148,431.54, but is reversed, in part, as to the award of pre-judgment interest. In cross-appeal No. 2023-CA-0652-MR, the October 24, 2022 order amending the December 3, 2021 judgment as to attorney fees is affirmed. O J Pharmacy paid the December 3, 2021 judgment in the amount of $622,043.43, including attorney's fees and interest. On remand, the trial court shall also determine whether O J Pharmacy is entitled to an offset or refund of any overpayment of attorney's fees and/or interest after applying the purchase price adjustment and recalculating the post-judgment interest.[13]

---

[13] Any argument not addressed by this decision is deemed moot.

ALL CONCUR.

BRIEFS FOR
APPELLANTS/CROSS-
APPELLEES:

Stephen E. Smith, Jr.
Hillary C. Landry
Paducah, Kentucky

ORAL ARGUMENT FOR
APPELLANTS/CROSS-
APPELLEES:

Stephen E. Smith, Jr.
Paducah, Kentucky

BRIEF FOR APPELLEES/CROSS-
APPELLANTS:

M. Austin Mehr
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEES/CROSS-
APPELLANTS:

M. Austin Mehr
Lexington, Kentucky