RENDERED: MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0623-MR

MI HUI CHON SALYER                                        APPELLANT

v.

APPEAL FROM BOYD CIRCUIT COURT
HONORABLE GEORGE DAVIS, JUDGE
ACTION NO. 08-CI-01331

CLINTON SALYER                                             APPELLEE

OPINION AND ORDER
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE: Appellant Mi Hui Chon Salyer ("Mi Hui") appeals two Boyd Circuit Court orders which found (a) her request for a final disposition of marital property was untimely due to her 13-year delay, and (b) the additional funds she requested were offset by her dissipation of assets. After review, we affirm.

# BACKGROUND

Mi Hui and Clinton Salyer ("Clinton") were married in October 1991, and in October 2008, Mi Hui petitioned for dissolution of the marriage. The circuit court referred the matter to the Domestic Relations Commissioner ("DRC") for an evidentiary hearing. In November 2008, the DRC entered her report and recommendations.

The DRC reported that at that time, Clinton was in the process of retiring from the U.S. Army and working full-time with the Cintas Corporation. Mi Hui was on unpaid leave as a government employee (having been previously employed by the U.S. government at a P/X facility on a military installation in Germany where the couple met). In part, the DRC reported that Clinton "acknowledges that [Mi Hui] is entitled to one-half of his net retirement benefits . . . upon dissolution of [the] marriage." Relevantly, the DRC recommended the court (1) enter an interlocutory decree of dissolution so Clinton could proceed with a home purchase; (2) restrain the parties from dissipating assets during the pendency of the action; and (3) reassign the matter for a final hearing "upon application of either party" after Mi Hui had an opportunity to make living arrangements outside Kentucky. (The DRC reported that at that time, Mi Hui intended to relocate to Georgia where she had more personal contacts and professional opportunities.)

In December 2008, pursuant to *Putnam v. Fanning*, 495 S.W.2d 175 (Ky. 1973), the Boyd Circuit Court entered a decree dissolving the marriage but reserving all other issues for future determination. Specifically, the court stated:

> All remaining issues including just division of marital property and debts, restoration of non-marital property, maintenance both temporary and permanent, child support, custody, costs and attorney's fees; and any and all other relief to which they may appear entitled and other matters shall be resolved subsequent to the entry of this decree.

In January 2009, the court referred the reserved issues to the DRC. However, after the first DRC hearing was cancelled, the parties did not reschedule. Beyond both of the parties' attorneys withdrawing in August 2009, nothing occurred in the action for more than 13 years.

In February 2023, Mi Hui moved the circuit court – pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02 – to restore the dissolution action to its active docket and requested final disposition of the marital property.[1] Mi Hui specifically requested that she be awarded one-half of Clinton's military retirement benefits. Mi Hui had received benefits from late 2008 until September 2022 when Clinton made an election that stopped the payments. Mi Hui asserted that she had moved to her native South Korea; English was not her first language; and implied

---

[1] There is no indication in the record that this action was removed from the court's active docket and/or dismissed without prejudice pursuant to Kentucky's "housekeeping rule," CR 77.02.

the delay in requesting final disposition was a "technicality" due to the language barrier. She also argued that the receipt of the benefits for so many years led her to believe that the matter had been finalized. For his response, Clinton asserted that Mi Hui had taken marital funds of roughly $120,000 from marital bank accounts and argued that this dissipation of funds in violation of the prior order should offset any amount that she should have received from his retirement. In March 2023, the court granted Mi Hui's motion and referred the matter to the DRC for a final hearing.

In December 2023, the DRC held a hearing. Mi Hui argued that Clinton recently and improperly stopped payments of her one-half interest in his military retirement and asked for that payment to be reinstated. She argued that in 2008 he admitted she was entitled to one-half of that benefit, and he should be held to that original acknowledgement. Conversely, Clinton argued that any remaining interest she had in his military retirement benefits was offset by the marital assets she improperly dissipated after the dissolution. He requested the court deny Mi Hui's request, or in the alternative, proceed with a full distribution of marital assets, including an accounting of funds Mi Hui dissipated after the dissolution, and an award for child support.[2]

---

[2] Clinton and Mi Hui had two children during the marriage and both minor children remained with Clinton after the dissolution. Mi Hui did not pay Clinton any child support.

In April 2024, the DRC entered a report and recommendations. In that report, the DRC stated that Clinton had introduced a savings account statement from 2008 in Mi Hui's name only, which showed a balance in excess of $84,000. The report indicated that Mi Hui testified she had sent $60,000 to her mother in Korea. Per the report, Clinton testified that Mi Hui had also taken a $40,000 redux payment from the Army. The redux payment was a lump sum early withdrawal of retirement benefits which then reduced Clinton's retirement benefits from 50% to 40%. Mi Hui denied taking the redux payment. The DRC report otherwise contained little findings, stating only that the parties "waited too long to raise the issues" and that the funds each requested offset each other. As such, the DRC recommended the court deny the parties' requests. Mi Hui filed exceptions.

In May 2024, the circuit court entered an order confirming the DRC's report and adopting the DRC's recommendations. In an order overruling Mi Hui's exceptions (collectively, "May 2024 Orders"), the Boyd Circuit Court stated, "The exceptions are overruled as the Findings and Recommendations of the [DRC] are supported by testimony presented at hearing and are consistent with applicable law." Mi Hui appealed.

## ANALYSIS

On appeal, Mi Hui argues the circuit court erred by failing to divide the marital assets pursuant to Kentucky Revised Statute ("KRS") 403.190[3] and to abide by *res judicata* or the law of the case. To the contrary, Clinton argues the doctrine of laches bars Mi Hui's arguments. Before a substantive discussion, we note two concerns.

First, we are concerned by the profound inadequacy of both briefs on appeal. Mi Hui's legal counsel cited to only one case, a *property* case, and failed to sufficiently support *any* legal arguments. Clinton's legal counsel appeared to cite two non-existent cases.[4] We remind both counsel that "citations of authority pertinent to each issue of law" are requirements, not mere suggestions. *See* Kentucky Rule of Appellate Procedure ("RAP") 32(A)(4). Then we turn to the record on appeal which is devoid of any of the hearings conducted by the DRC or before the trial court upon the exceptions. Neither party referred to any specific

---

[3] The provisions of KRS 403.190 direct a circuit court to consider all relevant factors in deciding how to divide property equitably between the parties.

[4] This Court issued a show cause order suspecting that artificial intelligence was used to obtain case citations that do not exist. A response to that order did not fully alleviate our serious concerns. Furthermore, we have previously warned this counsel that failure to follow briefing requirements could result in sanctions in future appeals. *See George v. George*, No. 2020-CA-1057-MR, 2021 WL 4343434 n.5 (Ky. App. Sep. 24, 2021). As we stated in 2020, we have "grown weary" of the increasing number of attorneys failing to follow the rules of appellate procedure. *Clark v. Workman*, 604 S.W.3d 616 (Ky. App. 2020). Nonetheless, we have elected to proceed with this decision without further delay in light of the many failures and delay already evident in this case. The appellee's motion to amend the brief, to which appellant objected, is denied by this Order.

portion of the hearing or evidence in their briefs. Thus, the record does not indicate whether the hearing before the DRC was even recorded, other than the trial court's order which states that the findings were supported by the testimony. It is the responsibility of the appellant to designate any hearings to be included as part of the record on appeal. *Miller v. Armstrong*, 622 S.W.3d 661, 662 (Ky. App. 2021) (citation omitted). That was not done in this case and further limits our review.

Second, this case exemplifies why marriage dissolutions pursuant to *Putnam v. Fanning*, 495 S.W.2d 175 (Ky. 1973), are not the better practice. *See Herndon v. Herndon*, 139 S.W.3d 822, 824 n.4 (Ky. 2004) ("This case well illustrates the problems that occur when trial courts bifurcate dissolution of marriage from the other issues in the case. Unless a compelling need for dissolution of the marriage is shown, better practice would be to resolve all issues in a single judgment."); *see also Vernatter v. Vernatter*, No. 2018-CA-001401-ME, 2019 WL 2157550 (Ky. App. May 17, 2019).[5] Despite these procedural concerns, we shall proceed to the merits of the matter to the extent we are able.[6]

---

[5] As this is unpublished, it is not binding but merely persuasive and insightful. *See* RAP 41.

[6] Despite the lack of a record of the hearing that led to the findings of the DRC, we can review the arguments for palpable error that results in manifest injustice. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

-7-

Mi Hui asserts that the DRC's findings and the principles of *res judicata* prevent relitigation of Clinton's retirement benefits, but she misconstrues both the facts and applicable law.

In 2008, the DRC stated that Clinton acknowledged Mi Hui was entitled to one-half of his retirement benefits upon dissolution. Clinton acknowledged that admission in his response to the motion in 2023, but argued that that benefit was contingent upon a fair division of all marital assets. Implicit in the DRC's statement is that Mi Hui *could be* awarded one-half of Clinton's retirement benefit *upon a full disposition of property*, a disposition that did **not** occur. As the parties did not attend a final hearing for the disposition of property, there was no final distribution or allocation to which the court is bound. Regardless, a trial court is not bound by a DRC report. "[T]he trial court has the broadest possible discretion with respect to the use it makes of reports of domestic relations commissioners." *Eiland v. Ferrell*, 937 S.W.2d 713, 716 (Ky. 1997) (citing *Haley v. Haley*, 573 S.W.2d 354, 356 (Ky. App. 1978)).

Moreover, Mi Hui argues that reversal is required because the trial court did not make specific findings as to each of the factors set forth in KRS 403.190. However, she did not move the trial court for more specific findings, calling into question whether Mi Hui waived this argument, thus precluding our review. *See* CR 52.02; *see also Polley v. Allen*, 132 S.W.3d 223, 230 (Ky. App.

-8-

2004) (citing CR 52.02) ("In the absence of a request for more specific findings on [property-division issues], we conclude that any error has been waived.").

Here, Mi Hui filed objections and the limited record before us indicates that the trial court considered those exceptions and found the testimony before the DRC supported the findings. In contrast, this Court has no evidence in the record before us to conclude that the trial court abused its wide discretion in adopting the DRC's recommendations. Again, the appellant bears the burden of ensuring that the record is complete with everything the appellate court needs to decide the issues raised on appeal. *Smith v. Smith*, 450 S.W. 3d 729, 731 (Ky. App. 2014).

Further, as the dissolution action was bifurcated and no final disposition of property had occurred, the parties were still legally maneuvering within the original dissolution action. Hence, an argument rooted in the "law of the case" doctrine is more appropriate than *res judicata*. While both doctrines are rooted in finality, the law of the case doctrine binds a court to previous final conclusions within the same lawsuit, and *res judicata* binds a court to final conclusions in a *prior* action. *See Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539 (Ky. 1956) (holding an opinion or decision of a court in the same cause of action, once final, becomes the law for that case in any subsequent trial or appeal as to any issues previously ruled on, however erroneous

the opinion or decision may be); *see also Miller v. Admin. Off. of Cts.*, 361 S.W.3d 867, 871 (Ky. 2011) (stating *res judicata* "prohibits the relitigation of claims that were litigated or could have been litigated between the same parties in a prior action"). However, as stated above, there was no final allocation of Clinton's retirement benefit, and as such, no law of the case to which the court is bound to uphold.

Further, Clinton's doctrine of laches argument had credence. The doctrine of laches is an equitable doctrine that bars a claim where "a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action." *Plaza Condominium Ass'n, Inc. v. Wellington Corp*., 920 S.W.2d 51, 54 (Ky. 1996) (citing *Kendall v. Mussman*, 247 S.W.2d 502, 503-04 (Ky. 1952)). More specifically, our Supreme Court has recognized:

> 'Laches' in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in

-10-

part, based on the injustice that might or will result from
the enforcement of a neglected right.

*Id.* (quoting *Denison v. McCann*, 197 S.W.2d 248, 249 (Ky. 1946)).

Here, the circuit court explicitly stated in its 2008 dissolution decree
that "all remaining issues including [a] just division of marital property . . . shall
be resolved subsequent to the entry of this decree." This language is not subtle or
misleading. The parties bore the burden of timely scheduling and attending a final
disposition hearing before the DRC, but neither met their burden.

This factual situation is quite distinct from situations where a court
allocates the marital assets and awards one party partial interest of a retirement
benefit, but the parties do not become aware of a problem with that distribution
until years later (often, the time of retirement). In those situations, a court may be
permitted to address the matter after much time has passed because a spouse did
not have notice that the allocation did not happen as ordered. *See Satterfield v.
Satterfield*, 608 S.W.3d 171, 175 (Ky. App. 2020) (finding the wife's claim 20
years after final dissolution was not unreasonably delayed, because she "had no
reason to inquire into" her ex-husband's failure to execute his duty, pursuant to a
qualified domestic relations order, "until such time as" that duty could be
executed); *see also Snodgrass v. Snodgrass*, 297 S.W.3d 878 (Ky. App. 2009)
(after interpretation issues pertaining to the court's division of retirement benefits
came into question, this Court permitted the husband to challenge the language of

-11-

the decree approximately six years after it reached finality because the effect of the language did not manifest until shortly before he retired).

Here, the court reserved on the marital asset distribution; the court referred the matter for further fact-finding and recommendations by the DRC; and the parties never attended an additional hearing before the DRC. Legally speaking, Mi Hui is not asking this Court to enforce a final circuit court judgment granting her one-half of Clinton's retirement. Instead, she is asking this Court to order the circuit court to make statutory findings that she failed to request 13 years ago. Under these circumstances, the 13-year delay is not reasonable. We do not believe the DRC intended Mi Hui's "opportunity to make appropriate living arrangement inquiries" (before reassigning the matter) to last 13 years. Mi Hui did not demonstrate reasonable diligence. She had clear notice that no final disposition occurred and failed to timely act. After the court issued the decree of dissolution, a final hearing was scheduled before the DRC but canceled and never rescheduled. The mere existence of that canceled hearing should have informed both parties that matters were not complete. We cannot speculate on the evidence that was produced at the hearing ultimately conducted in 2023, and in the absence of any record before us indicating that the evidence was insufficient or that more findings were requested, we affirm the circuit court's adoption of the DRC conclusion that Mi Hui "waited too long to raise the issues[.]"

-12-

**CONCLUSION**

Accordingly, we AFFIRM the May 2024 Orders of the Boyd Circuit Court.

ALL CONCUR.

ENTERED: __March 28, 2025__

_JUDGE, COURT OF APPEALS_

BRIEF FOR APPELLANT:

Brandon M. Music
Grayson, Kentucky

BRIEF FOR APPELLEE:

Natasha L. Kinnan
Catlettsburg, Kentucky