Jan GREER, Appellant,

v.

Vincent ARROZ and Shirley
Arroz, Appellee.

No. 2009–CA–001586–MR.

Court of Appeals of Kentucky.

Jan. 21, 2011.

James W. Craft, II, Whitesburg, KY, for appellant.

Angela Hatton Mullins, Whitesburg, KY, for appellee.

Before CAPERTON, THOMPSON and VANMETER, Judges.

## OPINION

THOMPSON, Judge.

On September 26, 2007, Vincent and Shirley Arroz filed an action in the Letcher Circuit Court against Jan Greer alleging that on September 27, 2005, Greer purchased property owned by the Arrozes at a master commissioner sale and wrongfully exercised control over personal property owned by the Arrozes which was left on the real property. Because the Arrozes were required to assert their ownership interest in the personal property in the judicial sale proceedings and prior to Greer's possession of the property, we reverse.

Numerous court events preceded the master commissioner sale. The master commissioner sale of the real property was preceded by a foreclosure action filed in March 2004 by Whitaker Bank. After the Arrozes failed to respond in the foreclosure action, a default judgment was entered and served on the Arrozes accompanied by an order of sale on August 4, 2004. A notice of master commissioner sale was served on the Arrozes on September 15, 2004; however, because the Arrozes filed bankruptcy, the matter was stayed until August 10, 2005, when an order was entered by the bankruptcy court terminating the stay. On the same date, Whitaker Bank filed and served a notice that it would proceed *in rem* to enforce its mortgage lien. An order of sale and order referring the case to the master commissioner for judicial sale was entered on August 12, 2005, and was served on the Arrozes. On August 31, 2005, notice of the master commissioner sale scheduled for September 27, 2005, was filed and served on the Arrozes.

The property was sold on September 27, 2005. A report of sale was filed on October 7, 2005, and the Arrozes were advised of their right to file exceptions. After no exceptions were filed, an order confirming the report of sale was filed and served on the Arrozes on October 25, 2005. The case remained active on the court's docket until an agreed order for final distribution of the proceeds was filed on April 22, 2008.

The personal property now claimed by the Arrozes was located on the real property to be sold and the court had subject matter jurisdiction as a result of the foreclosure and judicial sale proceedings. However, the Arrozes did not seek judicial relief for the return of their personal property before filing the present action for conversion on September 26, 2007.

A bench trial was held and Shirley Arroz testified concerning various items allegedly wrongfully in Greer's possession. The items included miscellaneous furniture, rolls of carpet, a 1968 truck, a 1965 trailer, Christmas decorations, ceramic and ceram-

ic accessories, and fifty cement blocks. Without producing any receipts, Arroz valued the items by stating their "cost" minus "depreciation." In addition to awarding the Arrozes $6,000, representing the value of the carpet which was no longer on the property, the circuit court ordered that the remaining items be returned to the Arrozes.

■ The issue presented is whether the Arrozes' failure to seek relief in the foreclosure action is conclusive evidence that they abandoned the property and, therefore, are precluded from filing an action for conversion against Greer. We conclude that the Arrozes abandoned any claim to the personal property that remained on the premises at the time of the confirmation of the judicial sale.

■ Abandonment of personal property is defined as "the relinquishment of a right or of property with the intention of not reclaiming it or reassuming its ownership or enjoyment." *Ellis v. Brown*, 177 F.2d 677, 679 (6th Cir.1949). Under Kentucky law, the elements of abandonment are a voluntary relinquishment of possession and intent to repudiate ownership. *Ellis v. McCormack*, 309 Ky. 576, 218 S.W.2d 391, 392 (Ky.1949). The intent to repudiate ownership may be inferred from the facts and the lapse of a long period of time following relinquishment of possession constitutes significant evidence of the intention to abandon the property. *Id.*

In *Kelley v. Nationwide Auto Restoration, LLC,* 246 S.W.3d 470 (Ky.App.2007), quoting 1 Am.Jur.2nd *Abandoned, Lost and Unclaimed Property* (section) 24 (2007), the fundamental principles regarding ownership of abandoned property were explained:

Property which is abandoned becomes subject to appropriation by the first taker or finder who reduces it to posses-

sion. Such person thereupon acquires absolute ownership in the property abandoned, as against both the former owner and any person upon whose land it happens to have been left.

*Id.* at 473. The Court further described the legal effect of abandonment of personal property:

[P]ersonal property, upon being abandoned, ceases to be the property of any person, unless and until it is reduced to possession with the intent to acquire title to, or ownership of, it. Such property may, accordingly, be appropriated by anyone, if it has not been reclaimed by the former owner, and ownership of it vests by operation of law, in the person first lawfully appropriating it and reducing it to possession with the intention to become its owner, provided such taking is fair.

1 C.J.S. *Abandonment* § 12 (1993). Thus, ownership of abandoned property vests in the possessor by operation of law. . . .

*Id.* Applying the above recited general rules, the facts and circumstances are conclusive that the Arrozes abandoned the personal property left on the real property purchased by Greer.

There is no dispute that the Arrozes knew that the personal property was located on the real property when the foreclosure proceedings began, during the proceedings, and after the master commissioner's sale. However, during the four years leading to the final confirmation of sale to Greer and with the knowledge that the real property would be sold, the first time the Arrozes made any demand for the personal property was after it was purchased by Greer.

In fact, according to Greer's testimony, the initial demand for return of the property was immediately after the judicial sale, at a time when Greer did not have

possession of the property. For thirty days after the sale, the property remained under the control of the master commissioner and, therefore, the court. However, the Arrozes neither attempted to remove the personal property nor requested relief from the court. We conclude that the facts are conclusive that the Arrozes abandoned the personal property that remained on the property at the time Greer took possession and, therefore, Greer became the lawful owner entitled to keep or dispose of the property.

 Although the doctrine of abandonment alone precludes the Arrozes claim for conversion, we also conclude that the application of laches is appropriate to the facts. The doctrine is one that bars claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action. *See Kendall v. Mussman,* 247 S.W.2d 502, 503–04 (Ky.1952). Laches operates to preclude an otherwise timely action if an unreasonable delay in bringing the action results in prejudice to the opposing party. As explained in *Plaza Condominium Ass'n, Inc. v. Wellington Corp.,* 920 S.W.2d 51, 54 (Ky.1996):

> This proposition was well articulated in *Denison v. McCann,* 303 Ky. 195, 197 S.W.2d 248, 249 (1946), quoting *City of Paducah v. Gillispie,* 273 Ky. 101, 115 S.W.2d 574, 575 (1938), as follows:
> 'Laches' in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

The Arrozes' delay in seeking the return of their personal property was unreasonable in view of their notices of the pending sale and available judicial remedies. Instead, they sat idle as the real property was sold and possession of it transferred to Greer. It was certainly reasonable for Greer to believe that upon taking possession of the real property, all personal property that remained was abandoned and she was free to keep it or dispose of it without legal consequences.

 Our reasoning is consistent with the policy of the law to protect the integrity of judicial sales. We hold that unless otherwise ordered by the court with jurisdiction over the real property, an order confirming a judicial sale is final and conclusive as to the rights of the parties with notice of the sale, including any personal property located on the property. *See Smith v. Decker,* 374 S.W.2d 487 (Ky.App. 1964).

Based on the foregoing, the judgment of the Letcher Circuit Court is reversed and the case remanded for entry of an order dismissing the Arrozes' complaint.

ALL CONCUR.