RENDERED: JULY 25, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0806-MR

SAVANNAH WILSON AND MARY
KINCAID                                                                              APPELLANTS

APPEAL FROM GALLATIN CIRCUIT COURT
v.        HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
ACTION NO. 22-CI-00095

AUGUSTA HOME SALES, INC.;
ASBURY, LP; EMILIO FRANKO;
AND FLAGSHIP COMMUNITIES,
LLC                                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, L. JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE: Savannah Wilson ("Wilson") and Mary Kincaid ("Kincaid")

(collectively "Appellants") appeal from several orders of the Gallatin Circuit Court

dismissing their claims against Augusta Home Sales, Inc. ("Augusta");[1] Asbury,

---

[1] The correct name of the entity is Augusta Home Sales, LLC. Plaintiffs incorrectly named
Augusta Home Sales, Inc. in their complaint.

LP ("Asbury"); Emilio Franko;[2] and Flagship Communities, LLC (collectively, "Appellees"). Finding no error, we affirm.

## BACKGROUND

In February 2020, Wilson purchased a mobile home from Augusta for $8,000, with money loaned to her by her grandmother, Kincaid. As a condition of the loan, Wilson executed a promissory note in favor of Kincaid for $9,000.[3] Wilson then signed a lease with Asbury to rent a lot at its mobile home park for $296 per month, plus an annual property tax assessment.

On May 17, 2021, Asbury charged Wilson $156.85 for 2020 county and city property taxes. Wilson disputed the charge based on information she learned from the county property valuation administrator. Because Asbury would not accept partial payments, Wilson ultimately did not pay the property tax or her June 2021 rent.

About this same time, Kincaid learned Wilson was having marital problems and discussed placing a lien on the mobile home to ensure she would be repaid if it was sold. At this point, Wilson was substantially behind on her loan

---

[2] The correct spelling is apparently "Franco."

[3] In addition to the $8,000 purchase price, Kincaid loaned Wilson money for a deposit on a lot rental at a mobile home park and the first month's rent.

payments to Kincaid. The title reflects that a lien was recorded in favor of Kincaid on May 27, 2021.

Wilson failed to pay rent to Asbury in July and August as well, resulting in a balance due of $1,430.85. On August 28, Asbury sent Wilson a notice that it was terminating her lease, effective September 30. The notice further advised Wilson to have her home and possessions removed from the premises before that date. On October 6, 2021, Asbury filed a forcible detainer complaint against Wilson and obtained a default judgment on October 19. That day, Asbury told Wilson that she had to remove her mobile home and all personal property within seven days.

During this time, Wilson was working with Asbury to obtain financial assistance from the state to pay her back rent. Asbury had discussed allowing her to remain on the property if certain conditions were met. Ultimately, Asbury proceeded with the eviction. On November 5, an eviction notice was issued ordering Wilson to remove her mobile home by November 18, 2021. It further cautioned that should she fail to do so, Asbury was authorized to have it towed, to remove the contents, and/or change the locks. In her deposition, Wilson testified that "[t]here [was] no way that I was able to [move the home] at that time. I just wanted my stuff out."

Upon receiving this notice, Wilson filed a motion to vacate the default judgment, which was denied on November 16. Two days later, Wilson was evicted. At that time, she took some clothes and household items, and Asbury changed the locks on the mobile home. Asbury told Wilson that she could schedule a time to remove her personal belongings,[4] but because she failed to move the home, they considered it abandoned. That same day, Wilson received notice that Asbury intended to sell the home under KRS[5] 376.480.

A month passed, and Wilson had not retrieved her personal property from the mobile home. On December 17, Asbury informed Wilson that the home and its contents had been sold. However, Asbury subsequently became aware of Kincaid's lien and conducted a second sale. Ultimately, Asbury conducted two more sales, the final sale being held on January 26, 2024.

In September 2022, Appellants filed a complaint against Appellees in Gallatin Circuit Court, asserting various claims, including wrongful distraint and conversion. Appellees filed counterclaims. After some discovery, both parties moved for summary judgment. The circuit court entered an order ("October 2023 order") which found that Asbury had not strictly complied with the statutory

---

[4] Wilson claims Asbury said they would contact her to schedule a time to remove her personal property. What is certain is that Wilson did not attempt to remove her property from the mobile home between November 18 and December 17.

[5] Kentucky Revised Statutes.

-4-

procedures for selling the property, but otherwise ruled in favor of the Appellees and dismissed Appellants' claims.

Appellants moved to file a supplemental complaint, which reasserted many of their previous claims and challenged the commercial reasonableness of the January 2024 sale. Asbury moved for partial summary judgment regarding the validity of the January 2024 sale and an order confirming the sale. The circuit court entered an order ("April 2024 order") which provisionally allowed Appellants to supplement their complaint and approved the January 2024 sale.

Asbury's breach of contract claim and the division of the sale proceeds were the only remaining issues for the court. The circuit court issued an order ("June 2024 order") granting Asbury's breach of contract claim (including attorney fees) and awarding it the sale proceeds. It also entered a deficiency judgment against Wilson for $4,247.26, plus interest. This appeal followed.

**STANDARD OF REVIEW**

The issues raised on appeal stem from three circuit court orders: two summary judgment orders (entered October 2023 and July 2024) and an order concerning Appellants' supplemental complaint (entered April 2024). "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v.*

-5-

*Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted). "Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*." *Metzger v. Auto-Owners Insurance Company*, 607 S.W.3d 695, 698 (Ky. 2020) (citation omitted). "[T]he matter of filing amended or supplemental pleadings is within the sound discretion of the court." *Hannan v. Hannan*, 256 S.W.2d 485, 488 (Ky. 1953). Therefore, we review the circuit court's ruling for abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted).

## ANALYSIS

As an initial matter, Appellants' brief does not comply with RAP[6] 32(A)(4), which requires "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Our rules require a preservation statement to assure the reviewing court that "the issue was properly presented to the trial court

---

[6] Kentucky Rules of Appellate Procedure.

and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). When a party fails to abide by the Rules of Appellate Procedure, we may choose "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted); *see also Ford v. Commonwealth*, 628 S.W.3d 147, 153-55 (Ky. 2021). At our discretion, we ignore the deficiency and proceed with the review.

## I. October 2023 Order

Appellants argue the circuit court erred in granting summary judgment to Appellees on the following issues/claims: (1) Wilson's abandonment of the mobile home; (2) the validity of Kincaid's lien; (3) violation of KRS 517.060; (4) wrongful distraint and attachment; (5) conversion; and (6) punitive damages. We will address each in turn.

### 1. Wilson's Abandonment of the Mobile Home

Appellants argue that genuine issues of material fact preclude a finding that Wilson had abandoned the mobile home. Following Wilson's eviction, Asbury sold the mobile home under KRS 376.480 to satisfy her debt. Appellees sought a declaratory judgment that Wilson had abandoned the mobile

home and that its sale procedure was lawful. KRS 376.480 provides in relevant part:

> (1) Any owner of real property who rents space on which a house trailer or mobile home is parked shall have a lien for rent due on any house trailer or mobile home, its contents, and other personalty *abandoned by the occupant on the landowner's property* for rent due, reasonable storage, cleanup costs, and utilities furnished to the unit and paid for by the landowner.
>
> (2) If, after a period of sixty (60) days, the rent, reasonable storage, cleanup costs, and utilities have not been paid, the house trailer or mobile home, its contents, and other personalty *abandoned by the occupant* may be sold to pay the rent, reasonable storage, cleanup costs, and utilities . . . .

(Emphasis added.)

The statute does not define the term "abandon." However, it is defined by *Black's Law Dictionary* as:

> 1. To leave (someone), esp. when doing so amounts to an abdication of responsibility. *2. To relinquish or give up (something) with the intention of never again reclaiming one's rights or interest in. 3. To desert or go away from (a place) permanently.* 4. To stop (an activity) because there are too many problems and it is impractical or impossible to continue. 5. To cease having (an idea, attitude, or belief); to give over or surrender utterly. 6. To leave (a ship) because of sinking or the threat of sinking. 7. Insurance. (Of an insured) to surrender to the underwriters the insured's interest in (the insured property) while claiming payment for the total loss.

*Abandon*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added). Under Kentucky law, the elements of abandonment of personal property "are a voluntary relinquishment of possession and intent to repudiate ownership." *Greer v. Arroz*, 330 S.W.3d 763, 765 (Ky. App. 2011) (citation omitted). And the intent to repudiate ownership may be inferred from the facts. *Id.*

The circuit court held that the evidence conclusively established that Wilson abandoned the mobile home. We agree that summary judgment on this issue was proper. From the time Wilson received notice that her lease would be terminated (August 2021) to the time the mobile home was first sold (December 2021), Wilson had over three months to retrieve her property and move the mobile home. While Asbury was working with her to obtain rental assistance during much of this time, she was at least aware of the possibility that it might not be approved, and that the eviction would proceed.

At a minimum, Wilson knew by October 30 that she needed to remove the home and her possessions. According to an affidavit by William Holland, an Asbury representative, on that date, he told Wilson she needed to move the home; if she was not going to move the home, she should remove her personal effects immediately. She was also aware of the potential consequences of not doing so. In early November, Wilson received an eviction notice warning that

if she did not move her mobile home, Asbury was authorized "to have it towed, to remove the contents, and/or change the locks . . . ."

Despite ample notice and opportunity, Wilson did not move the home. From this, one could reasonably infer an intent to abandon. Wilson also left many personal items in the home. Most compelling is her testimony that there was "no way that I was able to [move the mobile home] at that time. I just wanted my stuff out." Based upon this evidence, Appellees met their burden of showing that no genuine issue of fact is in dispute as to Wilson's abandonment of the mobile home. It was then up to Wilson "to produce at least some affirmative evidence showing that there is a genuine issue of material fact requiring trial." *First Federal Sav. Bank v. McCubbins*, 217 S.W.3d 201, 203 (Ky. 2006) (citations omitted).

Appellants contend the following facts weigh against a finding of abandonment, creating a genuine issue of material fact for trial:

- Wilson did not walk away from the mobile home but was evicted.

- Wilson did not accede to the eviction but attempted to gain alternate funding.

- Wilson challenged the eviction order.

- Wilson investigated the cost of moving the mobile home.

- Had Wilson not been barred from the premises, she could have sold the mobile home.

-10-

We disagree. The first three facts relate to the eviction, not the issue of abandonment of the mobile home. While Wilson did not voluntarily leave the real property where her mobile home was parked, she intentionally left her mobile home parked on the property. According to her own words, she had no way to move the mobile home; she "just wanted [her] stuff out."

Similarly, the fact that she explored the cost of moving the home is not relevant to whether she intentionally left the home on the property. Just because Wilson could not afford to move the home does not mean she left it there by accident. Finally, Wilson could have sold the home before she was barred from the premises. As noted above, Wilson had over three months to move or sell the property. Wilson has not shown that a genuine issue of fact exists for trial concerning whether she abandoned the mobile home.

**2. Validity of Kincaid's Lien**

Appellants next argue the circuit court erred in voiding Kincaid's lien under KRS 378A.040. They contend genuine issues of material fact preclude such a finding. KRS 378A.040 provides:

> (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

-11-

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

(3) A creditor making a claim for relief under subsection (1) of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence.

The circuit court appears to have found Kincaid's lien voidable under either KRS 378A.040(1)(a) or (b). For brevity, we limit our analysis to KRS 378A.040(1)(b), because we find summary judgment appropriate under that prong.

Concerning KRS 378A.040(1)(b), the circuit court found that Wilson did not receive anything of reasonably equivalent value in exchange for granting Kincaid a lien. Appellants argue that Kincaid's forbearance from enforcing the lien constitutes valid consideration. However, as noted by the circuit court, Appellants have produced no evidence supporting this argument.

Wilson testified that Kincaid did not give her anything in exchange for the lien. According to Kincaid, Wilson said she was having marital problems

-13-

and "[s]o I told her to protect me I wanted to go and put a lien on it." And so, Kincaid "took the title up there and filed a lien." There is no mention of any consideration offered by Kincaid as compensation for the lien. "[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482 (citations omitted). Appellants have presented no affirmative evidence that Kincaid gave up any right to sue Wilson in exchange for the lien.

Further, there is uncontroverted evidence that at the time of the transfer, Wilson "[i]ntended to incur, or believed or reasonably should have believed that [she] would incur, debts beyond [her] ability to pay as they became due." KRS 378A.040(1)(b)2. According to Wilson's deposition testimony, at the time she granted the lien (May 27), she knew she would not be able to pay her June rent. Therefore, Kincaid's lien was voidable under KRS 378A.040(1)(b), and the circuit court did not err in granting summary judgment on this issue.

**3. Claims Under KRS 517.060**

Appellants next argue the circuit court erred in granting summary judgment to Appellees on Appellants' claim for violation of KRS 517.060. That statute provides in relevant part: "A person is guilty of defrauding secured creditors when he destroys, damages, removes, conceals, encumbers, transfers, or

otherwise deals with property subject to a security interest with intent either to lower the value of the secured interest or unlawfully to hinder enforcement of that interest." KRS 517.060(1). As recognized by the circuit court, KRS 517.060 is a penal statute. However, KRS 446.070 "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005) (citations omitted). Here, neither Wilson nor Kincaid is within the class of persons the statute intended to be protected. Neither are secured creditors. Appellants appear to recognize this fact as they simply challenge the circuit courts' determinations that Wilson abandoned the home and that Kincaid's lien was void. We find no error.

**4. Wrongful Distress and Attachment Claim**

Appellants also contend the circuit court erred in dismissing their claim for wrongful distress and attachment. KRS 411.080 provides that if property is distrained or attached without good cause, the owner may recover damages for the wrongful seizure. However, Wilson's property was not distrained without good cause. It is undisputed that Wilson failed to pay rent from June 2021 forward, in violation of her lease. Asbury obtained a forcible detainer judgment and a court order authorizing it to have the mobile home "towed, to remove the

-15-

contents, and/or change the locks[.]" Further, KRS 376.480 granted Asbury a lien for the rent due and authorized it to sell the "the house trailer or mobile home, its contents, and other personalty . . . to pay the rent, reasonable storage, cleanup costs, and utilities[.]"

Appellants appear to argue that their claim is valid because the circuit court held that Asbury's first sale did not strictly comply with the notice procedures of KRS 376.480. But that does not mean that Asbury was not authorized to sell the home or that the sale was wrongful. Asbury had good cause to sell the abandoned home and its contents because Wilson's rent was over sixty days past due. *See* KRS 376.480(2). Summary judgment on this claim was proper.

**5. Punitive Damages Claim**

Appellants further argue the circuit court erred in dismissing their punitive damages claim. Appellants concede that the viability of this claim hinges on our finding that summary judgment as to Wilson's abandonment of the mobile home was improper. As we have affirmed on that issue, we find no error here.

**6. Conversion Claim**

Appellants challenge the circuit court's dismissal of their conversion claim on similar grounds. "Conversion is an intentional tort defined as the wrongful exercise of dominion and control over property of another[.]" *C&H Manufacturing, LLC v. Harlan Cnty. Industrial Development Authority, Inc.*, 600

-16-

S.W.3d 740, 745 (Ky. App. 2020) (internal quotation marks and citation omitted). The circuit court found that Wilson did not have the requisite ownership interest to prevail on a conversion claim because she abandoned the property. "[T]he doctrine of abandonment precludes any claim for conversion." *C&H Manufacturing, LLC*, 600 S.W.3d at 746 (citation omitted). It found that Kincaid similarly lacked any ownership interest due to her lien being void. Appellants again merely challenge these determinations. The circuit court did not err in dismissing Appellants' conversion claim.

## II. April 2024 Order

Appellants next argue the circuit court erred in denying their motion to file a supplemental complaint. In actuality, the circuit court partially granted the motion. It limited the supplemental complaint to allegations in the original complaint that were not fully resolved or adjudicated by the court's October 2023 order. From Appellants' brief, it appears their main grievance is that they were denied the opportunity to challenge the commercial reasonableness of the January 26, 2024, sale of the mobile home. However, the circuit court addressed this claim in its April 2024 order.

The circuit court ruled that Asbury had met its burden of showing that the sale was commercially reasonable, citing its affidavit demonstrating that the sale complied with KRS 376.480. To the extent Appellants attempt to argue the

-17-

circuit court erred in finding the sale commercially reasonable, we find no error. KRS 376.480 contains no requirement that the sale be "commercially reasonable." That language comes from the Uniform Commercial Code ("UCC"), KRS 355.9-610. We question whether the UCC applies to a sale under KRS 376.480.[7]

KRS 376.480 explicitly requires that the landowner provide notice to the homeowner of the time and place of the sale at least ten days before the sale; advertise the sale in a local newspaper for three consecutive publishing periods; and sell the property to the highest bidder. KRS 376.480(2), (4), (5). Appellants concede that the January 2024 sale complied with the notice, advertising, and bidding requirements of KRS 376.480. The sale conformed to the governing statute, which is all that was required.

### III. June 2024 Order

Finally, Appellants argue the circuit court erred in terminating the litigation through its June 2024 order. Previously, the court had granted summary judgment on Asbury's breach of contract claim but reserved the issue of damages.

---

[7] According to the comments to Section 9-109 (titled "Scope") of the Official Uniform Commercial Code, "With few exceptions . . . this Article applies only to consensual security interests in personal property." UCC § 9-109 cmt. 10. Asbury's lien is a nonconsensual lien created by statute. Further, the statute specifically excludes statutory liens to suppliers of services and materials. KRS 355.9-109(4)(b). KRS 376.480 is in the same chapter as these services and materials liens. Finally, the UCC does not apply to landlord's liens. KRS 355.9-109(4)(a). We would note that KRS 355.1-103(3) permits the use of the official comments as a guide for the interpretation of Chapter 355.

Asbury moved for summary judgment on the damages claim, arguing it was entitled to the entirety of the sale proceeds. The motion also sought an award of attorney fees. The court's June 2024 order granted Asbury's motion, awarding it a judgment of $17,747.36, which, after being offset by the sale proceeds of $13,500, left a deficiency judgment against Wilson for $4,247.36.

Appellants appear to challenge both the amount of the attorney fee award and the award of the entire sale proceeds to Asbury. As to the attorney fee award, they contend issues of fact preclude summary judgment. Specifically, they urge that Asbury's failure to follow the notice and sale requirements of KRS 376.480 in the first three sales inflated its costs and fees. However, a review of the billing records provided by Asbury's attorney reveals no charges relating to the first three sales.

Further, it is not true that "the entire litigation was perpetuated because of Asbury's . . . failures to conduct a proper sale[,]" as Appellants argue. Appellants brought several challenges to Asbury's right to sell the property, not just its method of sale. It is also undisputed that Wilson failed to pay rent, and Asbury had a valid breach of contract claim. Many of Asbury's attorney fees were incurred pursuing its own or opposing Appellants' claims on issues unrelated to notice and sale procedures. Appellants have not otherwise disputed the attorney

fee award, including its reasonableness. Summary judgment on this issue was not improper.

As to damages generally, Appellants attempt to argue that Asbury's failure to strictly comply with KRS 376.480's notice provisions in the December 2021 sale entitles them to damages, including a portion of the sale proceeds. However, any violation that occurred during the first sale was cured by the subsequent January 2024 sale, which Appellants concede complied with the statute. Further, Appellants have not cited any specific injury or provided any proof of damages. Again, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482 (citations omitted).

Finally, to the extent Appellants attempt to argue that the circuit court's procedure in awarding Asbury the entirety of the sale proceeds violated KRS 376.480(3), we find that argument unpreserved and decline to address it.

**CONCLUSION**

Accordingly, the orders of the Gallatin Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Stephen P. Huddleston
Warsaw, Kentucky

BRIEF FOR APPELLEES:

Christopher Wiest
Covington, Kentucky