RENDERED: JANUARY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0990-MR

JON DAVID WALKER          APPELLANT

v.
      
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 10-CI-502674

LYNN LEMMON WALKER          APPELLEE

AND

NO. 2024-CA-1049-MR

JON DAVID WALKER          APPELLANT

v.
      
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 10-CI-502674

LYNN LEMMON WALKER          APPELLEE

OPINION
AFFIRMING

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

EASTON, JUDGE: Jon David Walker (David) filed two appeals arising from his dissolution action with Lynn Lemmon Walker (Lynn). The first appeal stems from the Jefferson Family Court finding him in contempt, reducing but not terminating his maintenance obligation, and ordering him to pay part of Lynn's attorney's fees. In the second appeal, David challenges the family court's refusal to set aside the parties' Property Settlement Agreement, signed in 2010, under CR[1] 60.02. After a review of the record and the applicable law, we determine the family court did not abuse its discretion and therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

David and Lynn were married in 1968. Lynn filed for dissolution of the marriage in 2010. The parties raised three children, all of whom were adults at the time of filing, so custody was not an issue. When the dissolution action was filed, David was at the height of his career as a successful surgeon; he was making approximately $80,000 per month. The parties mediated a Property Settlement Agreement (PSA), and David agreed to pay monthly maintenance to Lynn in the amount of $22,000. They also settled all other issues of property division in this document. The PSA was signed in October 2010, and the family court

---

[1] Kentucky Rules of Civil Procedure.

incorporated the PSA into the Decree of Dissolution, which was entered in January 2011.

In 2018, David began slowing down his medical practice. He also began to decrease the amount of maintenance he was paying to Lynn. Beginning in March 2018, David was inconsistent in the monthly amounts he was paying to Lynn. In January 2021, David stopped maintenance payments completely. In June 2022, Lynn filed a motion to hold David in contempt for failure to pay maintenance as agreed. In August 2022, David filed a motion to immediately terminate his maintenance obligation.

In his motion to terminate maintenance, David alleged that he was unable to pay the agreed upon maintenance obligation, as he was no longer working the long hours he had been. He was planning to retire. David also argued Lynn was wealthy in her own right and no longer needed money from him. Additionally, and perhaps most significantly regarding the litigation to come, David claimed the parties' oldest son (Jesse) had been contacted by another man in December 2020 who claimed to be Jesse's biological father. This man alleged he and Lynn had a long affair many years ago, around the time Lynn became pregnant with Jesse. This man knew information about Jesse, including specific health issues from which he suffered, which ran in the man's family.

Prior to the hearing, Lynn filed a motion *in limine* to exclude any evidence and testimony regarding her alleged affair, as she argued it was not relevant to the issue of maintenance, which is solely a financial matter. Lynn argued that any evidence regarding this alleged affair was "a cheap intimidation tactic aimed at shaming the Petitioner, and the court should not tolerate it."[2] Lynn also claimed in her motion that David had not provided all the information requested in discovery, and she asked the family court to not allow him to rely on any documents he had not provided to her. David filed a response in opposition, and he claimed he had provided everything he had about his finances.

The family court held a hearing on all motions on May 12, 2023. The family court granted Lynn's motion to exclude any evidence of her affair, ruling that it was irrelevant. The family court determined that fault is not an issue regarding the *modification* of maintenance, which is a financial matter. As for the discovery matter, the family court agreed that if David had not provided documents to Lynn, he could not rely on them at the hearing.

Lynn testified first. She explained that in the PSA they agreed to maintenance payments of $22,000 per month. At the time the PSA was drafted, David was making about $80,000 per month. He kept the entirety of his medical practice in the divorce, while all other assets were divided. She stated David began

---

[2] Motion *in Limine*, May 8, 2023, Record at 140-141.

reducing his payments to her in 2018. By her calculations, he owed her an arrearage of $890,000.

Lynn told the family court David paid her a total of $240,000 in 2018. She acknowledged they had a conversation that year in which he told her he could no longer afford to pay her the full amount every month. She agreed to accept less, and she testified that she "wanted to be understanding about that." She did not recall exactly when this conversation took place. Lynn said that in 2019, David paid her $180,000. It was in 2019 that David began to be more erratic with his payments, and Lynn told him that she needed to know what to expect to plan for her budget. In 2020, David paid her $120,000. In 2021 and thereafter, he made no payments. As far as Lynn was aware, David never filed a motion to reduce his maintenance payment; it was simply a discussion between the two of them.

Lynn then testified as to her counsel's attempts to get certain financial documents from David in discovery. She provided the requests sent to him, as well as David's responses and a list of what he still had not provided as of the date of the hearing.

On cross-examination, Lynn testified David still gave her expensive gifts after the divorce and occasionally provided extra money to her around the holidays when the children and their families would stay with her. She conceded that she agreed to David reducing his payments from $22,000 to $10,000 per

month when David said he could no longer afford the full amount. But she believed the arrangement was to be temporary.

David testified next. At the time of the hearing, he was 75 years old. He has some medical issues, and he has been slowing down at work. He was only working part-time and no longer doing any "big" surgeries. He stated when the divorce occurred, he was at the peak of his earning capacity, and it took him many years to get to that point. David testified he was "destroyed" when they divorced, and he would have agreed "to almost anything she asked for."

David told the family court he and Lynn had a relatively good post-divorce relationship until December 2020, when "my whole world blew up." The family court sustained an objection from Lynn, and the court reminded David that none of the information about infidelity was relevant to the day's proceedings. Despite the family court's warnings, David referenced the affair several more times throughout the hearing. He stated he didn't think she would ever ask for more money from him "after what she had done." He testified as to their agreement to lower his payments to $10,000 per month. He also argued that Lynn has more savings than he does. David also insisted he was not hiding anything from Lynn or her counsel and was unsure of what some of the accounts were that were referenced in their discovery requests.

At the conclusion of the hearing, David asked the court if they could supplement the record with written memorandums about what the excluded testimony would have been. The family court agreed, and it stated that it did not believe additional hearing time would be needed.

The family court entered an Order on June 20, 2023, in which it found David in contempt for failing to abide by the PSA, and it set a purge amount. Importantly, however, it took the parties' verbal agreement into account, and the court determined David's purge amount accordingly. Further, the family court awarded Lynn attorney's fees, to be determined at a later date once an affidavit could be filed. The family court also lowered David's maintenance obligation to $7,500 per month, retroactive to the date David filed his motion to terminate.

Lynn then filed her affidavit for attorney's fees, in which she requested $32,433. The family court awarded Lynn $20,000 in attorney's fees. David also filed a motion to alter, amend, or vacate, which the family court denied. David then filed his first appeal.

Subsequently, in April 2024, David and Jesse took a paternity test, and it was conclusively established that David is not Jesse's biological father. Soon thereafter, David filed a Verified Motion to Set Aside Property Settlement Agreement. In this motion, David asked the family court to set aside the parties' PSA. He sought relief pursuant to several sections of CR 60.02. David argued that

Lynn's infidelity and concealment of Jesse's true paternity equated to fraud, and therefore the PSA should be set aside. In his motion, David states "[t]he primary issue presented in this case is whether the Petitioner's concealment of her long-standing affair, which resulted in the birth of a child who Petitioner . . . falsely represented was Respondent's biological son, merits setting aside the underlying settlement agreement."[3]

Lynn filed a response in May 2024. The family court took the motion under submission, and it entered an Order on July 31, 2024, which denied the relief David requested. The family court determined that subsection (a) of CR 60.02 was unavailable, as such a motion must be made within one year of judgment, and the PSA in question was entered in 2011. The family court also determined that neither subsection (d) nor (f) applied, as David was not prevented from presenting fully and fairly his side of the property issues of the case at the time of the divorce. Additionally, the family court determined the motion was not brought within a reasonable time, as David was aware of the possibility that Jesse was not his biological child as early as December 2020. David then timely filed his second appeal.

---

[3] Verified Motion to Set Aside Property Settlement Agreement, April 30, 2024, Page 367 of record.

-8-

## STANDARD OF REVIEW

Modification of maintenance is reviewed for abuse of discretion. *Tudor v. Tudor*, 399 S.W.3d 791, 793 (Ky. App. 2013). "We cannot substitute our judgment for the family court's if there is substantial evidence supporting that court's decision. Further, we may not set aside the family court's factual findings unless they are clearly erroneous." *Andrews v. Andrews*, 611 S.W.3d 271, 273 (Ky. App. 2020) (citation omitted).

Likewise, "[a]n appellate court's standard of review for admission of evidence is whether the trial court abused its discretion." *Stephens v. Commonwealth*, 680 S.W.3d 887, 898 (Ky. 2023) (citing *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006)). Appellate review of a finding of contempt is also governed by the abuse of discretion standard. *Meyers v. Petrie*, 233 S.W.3d 212, 214 (Ky. App. 2007). An award of attorney's fees is reviewed for abuse of discretion. *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). And finally, the "standard of review of an appeal involving a CR 60.02 motion is whether the trial court abused its discretion." *White v. Commonwealth*, 32 S.W.3d 83, 86 (Ky. App. 2000).

"The circuit court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. While the circuit court's factual findings are given deference, questions of law are reviewed *de*

*novo.*" *Tudor*, *supra*, at 793 (internal quotation marks and citations omitted).  A mere disagreement by a reviewing judge as to the results selected by the family court judge cannot equate with an abuse of discretion.

## ANALYSIS

### No. 2023-CA-0990-MR

David argues the family court made several errors in its June 20 Order.  First, he alleges the family court erred when it would not consider any evidence of Lynn's infidelity.  He also claims that because Lynn waited too long to file her motion for contempt, she should be barred by the doctrine of laches.  He contends the family court erred when it determined Lynn's present net worth was not relevant to the issue of modification of maintenance, and that it improperly relied on the parties' settlement negotiations.  Finally, David argues the family court abused its discretion by requiring him to continue to work in order to pay maintenance, when it found him in contempt, and when it awarded attorney's fees to Lynn.

The statute governing modification of maintenance is KRS 403.250, which reads in relevant part as follows:

> (1) . . .the provisions of any decree respecting
> maintenance may be modified only upon a showing of
> changed circumstances so substantial and continuing
> as to make the terms unconscionable.

The paragraph in David and Lynn's PSA governing maintenance states:

Commencing on the first day of the month following the sale of the marital residence (Upper River Road property) [David[4]] shall pay maintenance to Lynn in the amount of $22,000 per month. Said maintenance shall be deemed taxable income to Lynn and deductible to [David]. [David's] maintenance obligation shall terminate upon the death of Lynn, the death of [David], or Lynn's co-habitation with an unrelated adult, or her remarriage. Said maintenance shall be modifiable pursuant to Kentucky Law.[5]

When the decree of dissolution was entered in 2011, the family court found the PSA not to be unconscionable. With that being said, "[a] separation agreement which was originally determined not to be unconscionable may later be modified if due to a change in circumstances the agreement has become unconscionable. However, the party challenging the agreement as unconscionable has the burden of proof." *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007) (citation omitted). "'Unconscionable' means 'manifestly unfair or inequitable.'" *Bickel v. Bickel*, 95 S.W.3d 925, 927 (Ky. App. 2002).

Dealing specifically with the family court's decision not to terminate maintenance, David contends the family court abused its discretion in not allowing any evidence regarding Lynn's affair, by relying on their settlement negotiations, and by deeming irrelevant Lynn's present net worth. He also argues that by failing

---

[4] David was referred to by his first name in the PSA and by the family court in its orders, but he primarily uses his middle name David.

[5] Property Settlement Agreement, Page 8 of record.

to terminate his maintenance obligation, the family court is essentially requiring him to continue working.

We shall first address David's strenuous argument that the family court should have allowed evidence of Lynn's infidelity. David cites *Chapman v. Chapman*, 498 S.W.2d 134, 138 (Ky. 1973), in which the Court said, "fault is not to be considered in determining whether a spouse is entitled to maintenance but it may be considered insofar as the amount is concerned." The *Chapman* case, however, involved the *creation* of a maintenance obligation, rather than a *modification* of maintenance. The rationale of *Chapman* has been criticized, but it has not been overruled. *See, e.g.*, *Tenner v. Tenner*, 906 S.W.2d 322 (Ky. 1995) (Stephens, C.J., concurring). For example, the Court stated:

> KRS 403.200 does not include "fault" anywhere as a factor to be considered when arriving at a just amount of maintenance. It states those factors that are to be considered, and describes them as "all relevant factors." The Legislature did not choose the language "all relevant factors including *but not limited to*:"; language it could have chosen. It is true that our former Court of Appeals in *Chapman*, *supra*, held, despite the glaring legislative exclusion, that fault may be considered in determining the amount of maintenance. However, the fault considered in *Chapman* was on the part of the party seeking maintenance. In *Leveck* [*v. Leveck*, 614 S.W.2d 710 (Ky. App. 1981),] the party seeking maintenance sought more money on appeal contending that her spouse was at fault and relying on *Chapman*. This court, in deciding *Leveck*, said simply that there was no showing that the trial court failed to consider all relevant factors within KRS 403.200(2).

> While we accept the holding of *Chapman*, noting our prior criticism, here is where we draw the line limiting when fault may be considered to the disregard of KRS 403.200. We believe if considering fault in determining the amount of maintenance has any redeeming quality, it is that it may prevent a windfall to the faulty party seeking maintenance. We decline to further disfigure the statute, against which *Chapman* is already guilty of mayhem, by holding that the party seeking maintenance may punitively use the fault of his or her spouse to extort an amount of maintenance greater than what the statute would legitimately allow. We do not believe it is constitutionally permissible for the judiciary to reinsert it where the Legislature has seen fit to do otherwise.

*Platt v. Platt*, 728 S.W.2d 542, 543-44 (Ky. App. 1987).

Again, *Platt*, unlike the present case, involved the establishment of maintenance, not the modification of it. And other cases have at least indicated that fault should not be considered regarding the modification of maintenance. *See Sharp v. Sharp*, 516 S.W.2d 875, 878 (Ky. 1974).

With the criticism and limitation of *Chapman*, the Kentucky Supreme Court has indicated that allegations of fault from circumstances occurring years prior should not be considered in the modification of maintenance. For the sake of argument, even if this Court accepts David's contention that modification should follow the rationale in *Chapman* that allowed consideration of fault when determining an amount, nothing in *Chapman* or any other case *requires* the court to consider fault. The Court in *Chapman* clearly stated, "fault is not to be

considered in determining whether a spouse is entitled to maintenance but it *may* be considered insofar as the amount is concerned." *Chapman*, *supra*, at 138 (emphasis added). "*Chapman* does not mandate that a trial court consider fault." *Roper v. Roper*, 594 S.W.3d 211, 231 (Ky. App. 2019).

The family court in this instance, despite its ruling on Lynn's motion *in limine* that no evidence of infidelity was to be presented in the hearing, was clearly aware of Lynn's affair and the possibility that David was not Jesse's biological father. It was referenced on several occasions in written documents filed with the family court, and David made several statements during the hearing. It was the family court's prerogative to determine whether to consider this information in its evaluation of the evidence to decide if "changed circumstances" existed to the point where modification was warranted. We conclude the family court did not abuse its discretion in its decision to exclude consideration of fault under these circumstances.

Somewhat relatedly, David argues Lynn should be barred from recovering by the doctrine of laches, because she waited approximately eighteen months to file her motion for contempt after David stopped paying maintenance. This argument has no merit.

> 'Laches' in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party.

> Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

*Greer v. Arroz*, 330 S.W.3d 763, 766 (Ky. App. 2011).

David argues generally that he has been prejudiced by Lynn's delay in filing her motion for contempt. He does not specify how he was prejudiced other than stating he was at risk for being incarcerated for contempt for not having the ability to pay his arrearages immediately. This is speculative, at best. The doctrine of laches "serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action." *Moore v. Commonwealth*, 357 S.W.3d 470, 494 (Ky. 2011). "[F]or a plea of laches to be available it must be shown that the delay in bringing an action or otherwise asserting a right, caused the other party to change his position and that his rights have been prejudiced." *Hardwick's Ex'r v. West*, 168 S.W.2d 353, 358 (Ky. 1943). David is unable to meet this burden.

-15-

"[M]aintenance payments are vested from the entry of a decree and ordinarily can be modified only upon the entry of a subsequent order[.]" *Combs v. Combs*, 787 S.W.2d 260, 263 (Ky. 1990). David was aware he owed maintenance to Lynn, even if he only assumed he would be paying the reduced amount the parties agreed upon post-PSA. And in fact, the amount to be paid was determined by the family court based on that lower agreed-upon monthly payment. David failed to file a motion to terminate or modify before unilaterally deciding he was no longer going to pay. Lynn accepted David's lower payments until David stopped paying completely. David suffered no prejudice by Lynn waiting eighteen months to file her motion for contempt.

David also argues the family court erred in relying on the parties' settlement negotiations. The parties' PSA was reached during mediation. In the original written PSA, the sentence regarding any modification of maintenance read "Said maintenance shall be modifiable, and shall automatically be modified, once [David] is not working full-time, or his ability to work is limited by disability or illness." The second part of that sentence is crossed out, and a handwritten notation was substituted, so that the final language in the PSA reads "Said maintenance shall be modifiable pursuant to Kentucky law." The family court in its order stated "[David's] decision to reduce his workload or retire does not automatically warrant a reduction in his maintenance obligation. The parties

-16-

considered and rejected that idea in their settlement agreement."[6] David claims this statement illustrates the family court's error. We disagree.

David cites *Goodin v. White*, 342 S.W.3d 282, 286-87 (Ky. App. 2011), which said, "[c]ompleted settlement agreements are no more admissible than offers made during the negotiation process." In a civil case in which liability is being determined, which *Goodin* was, David is correct. But in dissolution cases, an executed settlement agreement is explicitly incorporated into the record and is to be enforced as a contract. *Wagner v. Wagner*, 563 S.W.3d 99, 103 (Ky. App. 2018). The stricken language is actually part of the PSA in the record.

David cites to no cases that prohibit a family court from considering what the parties may have negotiated during mediation, should the information arise in this manner from the language of the PSA itself. At any rate, even if the family court's consideration of the negotiation regarding modification of maintenance was in error, we deem it to be harmless error. We must also note that the family court ultimately did take David's health issues and employment status into account, as the court substantially reduced David's maintenance obligation to Lynn.

David argues the family court erred when it determined that evidence of Lynn's current net worth is irrelevant to the issue of modification. He cites

---

[6] Order, June 20, 2023, Page 282 of record.

KRS 403.200, which again, is the statute governing the *establishment* of maintenance, not the *modification* of maintenance. Pursuant to statute, the sole factor to be used respecting the modification of maintenance is "changed circumstances so substantial and continuing as to make the terms unconscionable." As stated by the family court, Lynn has not worked outside of the home since 2003. She worked very little during the marriage and was the primary caretaker of the children. The parties were married for 42 years. The wealth Lynn has accumulated since the divorce has been due to the distribution of marital proceeds or from David's maintenance payments.

> KRS 403.250, the statute that allows for the modification of maintenance awards, states: "[T]he provision of any decree respecting maintenance may be modified *only* upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." KRS 403.250(1) (emphasis added). The statute requires that the changed circumstances occur after the divorce decree and maintenance obligation become effective. Implicit in this requirement is the understanding that the circumstances of the parties brought about by the entry of the divorce decree and maintenance obligation cannot serve as the basis of the "changed circumstances" required by the statute. Rather, the parties' circumstances at the time of the decree and maintenance obligation are the status quo against which the changed circumstances requirement of KRS 403.250(1) is to be measured. Were we to conclude otherwise, every maintenance obligation could immediately be modified under the statute. That simply is not the purpose of KRS 403.250—it allows a modification only where there has been a change in circumstances *subsequent* to the immediate effects of the

-18-

divorce decree.

*Rayborn v. Rayborn*, 185 S.W.3d 641, 643-44 (Ky. 2006).

It does appear from the record that Lynn's net worth does now rival David's. However, that is ultimately due to what the parties agreed upon in their PSA. The question now is not whether Lynn's current circumstances would entitle her to an initial maintenance award; it is whether the parties' agreement for David to pay Lynn maintenance has become unconscionable. *See Holland v. Herzfeld*, 610 S.W.3d 360 (Ky. App. 2020). And again, the family court did take David's changed circumstances into account when it reduced his maintenance. It granted partial relief to David because of the changed circumstances.

Overall, the family court did not abuse its discretion when it reduced, but did not terminate, David's maintenance obligation. The family court considered David's decreased workload and health and substantially decreased his monthly payment obligation. While he testified that he anticipated retiring, he was still working part-time at the time of the hearing.

David always has the option of returning to the family court by filing a subsequent motion to modify or terminate his maintenance when he does retire. As the family court did here, any modification can be made retroactive to the time a motion was made. When dealing with a modification due to retirement, "the trial court should examine the totality of the circumstances surrounding the retirement

to ensure that it is objectively reasonable, the burden of proof being on the party seeking a modification of the award." *Bickel*, *supra*, at 929.

The next issue David appeals is the family court's finding him in contempt for failure to pay maintenance as agreed. As we have recounted, David reduced his payments to Lynn beginning in 2018, and in 2021, stopped making any payments altogether.

"Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996). "Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant." *Id.* "While one may be sentenced to jail for civil contempt, it is said the contemptuous one carries the keys to the jail in her pocket, because she is entitled to immediate release upon her obedience to the court's order. Whether civil or criminal, a party cannot be punished for contempt for her failure to perform an act which is impossible." *Crowder v. Rearden*, 296 S.W.3d 445, 450 (Ky. App. 2009) (citation omitted).

The family court found David in contempt for failing to pay maintenance as ordered. It calculated his arrearage and ordered that David could purge himself of contempt by paying that amount within 30 days of the order. It also granted Lynn's attorney's fees and costs related to the motion for contempt as a sanction. Notably, the family court took the parties' agreement to reduce David's

payments into account when it calculated what he owed. Thus, instead of the $890,000 Lynn argued was owed, the family court ordered David to pay $252,240.40.

David argues it was an abuse of discretion for the family court to find him in contempt, because he clearly had no intention of disrespecting the court. But it is undisputed that David failed to pay maintenance to Lynn as ordered by the court. That is a contemptuous attitude toward the authority of the court.

In his brief, David correctly argues that a contemnor must have the ability to purge himself of the contempt, but he never actually argues that he is unable to afford the maintenance payments. He simply argues Lynn "offered no proof that she even has a need for any past-due or continuing maintenance."[7] That is not the standard. "The inability to comply must be shown clearly and categorically by the defendant, and the defendant must prove he took all reasonable steps within [his] power to insure compliance with the court's order." *Crowder*, *supra*, at 451. David did not offer any such proof.

The family court determined "[David] has the financial resources to pay Lynn's maintenance as ordered, but he simply refuses to do so. Based on the foregoing, the Court finds that [David] willfully, and without good cause, failed to

_____

[7] Appellant's Brief, Page 21.

pay maintenance as ordered."[8] There is substantial evidence to support this finding, and it therefore is not clearly erroneous. The family court's decision was not an abuse of discretion.

Finally, David argues the family court abused its discretion in awarding attorney's fees to Lynn based on his discovery deficiencies. An award of attorney's fees is allowed under KRS 403.220, which states:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

A trial court "is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." *Gentry*, *supra*, at 938. David argues Lynn has her own funds with which to pay her attorneys. But it is not an abuse of discretion to award attorney's fees when the parties' resources are approximately equal, and the award was the result of a party's refusal to cooperate with discovery. *Lampton v. Lampton*, 721 S.W.2d 736, 739 (Ky. App. 1986).

---

[8] Order of June 20, 2023, Page 284-85 of Record.

The family court found a motion and order to compel were required, and even then, David failed to provide any business account records, credit card statements, statements regarding certificates of deposit, a list of monthly expenses, or all of his personal assets. David claimed at the hearing that he did not know what these accounts were that Lynn referenced in her discovery requests. He agreed he did not provide credit card records, because he did not believe them to be relevant. He indicated some of his bills are paid from his business account. David did not understand why Lynn and her counsel needed anything more than his tax returns.

David now argues that it was not bad faith for him to not provide Lynn with these irrelevant documents. He also claims Lynn was unable to show she was prejudiced by this. He also claims he disclosed everything he had. The family court found otherwise, and that finding is not clearly erroneous. Again, it is within the circuit court's purview to weigh the credibility of the witnesses and to choose whom to believe. *Baird v. Baird*, 234 S.W.3d 385, 388 (Ky. App. 2007).

## No. 2024-CA-1049-MR

David's second appeal involves the family court's order of July 31, 2024, which denied David's motion to set aside the parties' PSA pursuant to CR 60.02.

-23-

David argued to the family court, and he continues the argument to this Court, that the PSA was procured by fraud. He claims had he known about Lynn's infidelity, he would not have continued the marriage. She then would not have been entitled to all the assets she received in their dissolution, because the affair occurred very early in their marriage. He also argues he would not have agreed to such a large, open-ended maintenance award.

David argued that CR 60.02(a), (d), or (f) applied. The family court issued an Order on July 31, 2024, which denied the motion. It ruled that subsection (a) was not available because a motion must be brought within one year of the judgment. As for subsections (d) or (f), the family court ruled that the motion was not brought "within a reasonable time." The family court also denied relief because David was not deprived of a fair opportunity to fully present his side of the case at the initial hearing.

CR 60.02 states in its entirety:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the

judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

David originally asked the family court for relief under subsections (a), (d), or (f). The family court properly ruled that David could not be relieved under subsection (a), mistake, due to the one-year limitation. The PSA was entered in 2011; this motion was not filed until 2024. Under both (d) and (f), the motion must be filed "within a reasonable time." What is considered a "reasonable time" is within the discretion of the trial court. *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014).

The family court in this instance determined David's motion was not filed within a reasonable time, because he was aware of the possibility that Jesse was not his biological child as early as December 2020 yet waited until April 2024 to file the motion. David argues this was an abuse of discretion because he did not know for certain that Jesse was not his biological child until the paternity test results came back in April 2024.

In this situation, both David and Lynn had differing degrees of suspicions about Jesse's paternity and different times when those suspicions arose. Lynn should have known of the possibility from the outset, even though David

-25-

may not have suspected anything before 2020. This does not mean that David can just assume Lynn knew with certainty about the paternity before he did. Fraud about the paternity would involve knowledge, not just suspicion.

This leads us to an important observation: Jesse's paternity is not the real crux of the issue between David and Lynn; the issue was Lynn's affair, of which David became aware in December 2020 because of the then unanswered question of Jesse's paternity, which has nothing to do with the issue of maintenance. David cites to several cases involving CR 60.02 motions and paternity. But David is not asking this Court to set aside a child support award for a child that is not his biological child; he is asking to set aside a maintenance award for his ex-spouse to which he agreed.

The purpose of a child support order is for support of the parties' minor *child*, while the purpose of maintenance is to provide for the former *spouse*. Jesse, as well as the parties' other two children, were adults at the time of the parties' divorce. There was never any child support order. Paternity of Jesse is not relevant when it comes to the issue of maintenance. It was not an abuse of discretion for the family court to determine that David's motion was untimely in these circumstances.

David still argues the PSA was procured by fraud, and therefore CR 60.02(d) applies. The family court determined he was not entitled to relief under

this section because "Lynn's deception does not amount to 'fraud affecting the proceedings' because it did not prevent [David] from presenting fully and fairly his side of the case,"[9] per *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 818-19 (Ky. 2002). We agree.

"Fraud consists in successful deception intentionally practiced to induce another to part with property or some legal right. In other words, there must be some material misrepresentation made with the knowledge that it was false and with the intent that it be acted upon." *Mays v. Mays*, 541 S.W.3d 516, 524 (Ky. App. 2018) (internal quotation marks omitted). That has not been shown to have occurred here. David argues he would not have continued the marriage had he known the truth about the affair or paternity. That may very well be true. But he cannot revise the history of the parties' 42-year marriage.

Clearly, Lynn hid her infidelity from David for many years. It appears that the affair had long before concluded when the parties divorced. And while Lynn may have known about the possibility that David was not Jesse's biological father, her testimony indicates she did not know for certain. It was within the family court's prerogative to believe Lynn's testimony. While it is probable Lynn hid her affair in order to keep her marriage to David intact, there is certainly no evidence that she hid it with the intent of procuring future maintenance

---

[9] Order of July 31, 2024, Page 436 of Record.

should the marriage end in divorce twenty years later. It is not fraud done with the intent of one party obtaining an unfair portion of the marital property, like in *Terwilliger*.

Finally, David argues the PSA should be set aside pursuant to CR 60.02(f), "any other reason of an extraordinary nature justifying relief." "Subsection (f) of CR 60.02, the catchall provision, can apply only if none of that rule's specific provisions applies." *Alliant Hosps., Inc. v. Benham*, 105 S.W.3d 473, 478 (Ky. App. 2003). As with subsection (d), a motion under this provision must be brought "within a reasonable time." The family court agreed that no other subsection of CR 60.02 applied to the facts of this case. But it determined that David "was not deprived of a fair opportunity to present his claim at trial, because Lynn's infidelity was not relevant to any issue before the Court at the time of the parties' divorce."[10] It also concluded that the motion was not made within a reasonable time. The family court deemed this motion as "an attempt for a 'second bite at the apple' after his motion to modify was denied."[11] We agree.

Lynn hid the affair and worse she admittedly lied about the pregnancy with Jesse being the result of a sexual assault by this other man. Lynn's behavior is reprehensible. While we have sympathy for the shocking information David and

---

[10] *Id.* at 437.

[11] *Id.*

Jesse received almost a decade after the divorce, it was not an abuse of the family court's discretion to fail to grant David the total relief he sought. At the time the PSA was entered, the parties' children were emancipated adults. There were no issues of custody or child support; it was solely a division of assets and maintenance, which was agreed upon by the parties. While we certainly understand David may not have agreed to the maintenance award had he known of Lynn's affair, the parties were still married for 42 years. David was the only father Jesse knew as he grew up.

"Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005). "The fact that a reviewing judge might have decided the issue differently had he/she occupied the trial bench is not a sufficient basis for concluding that the trial court abused its discretion." *Perrine v. Christine*, 833 S.W.2d 825, 827 (Ky. 1992). As a court of review, we are not allowed to usurp the discretion that rests in the family court. *Id.* While the circumstances of this case are unusual and could have persuaded another judge to exercise discretion

differently, we cannot say the family court abused its discretion in its denial of David's 60.02 motion.

## CONCLUSION

The family court's findings are not clearly erroneous, and it did not abuse its discretion in its orders.  We therefore AFFIRM the orders of the Jefferson Family Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Allison Spencer Russell
Louisville, Kentucky

BRIEF FOR APPELLEE:

Louis I. Waterman
Spencer J. Brooks
Prospect, Kentucky